**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                   )
SERGIY KURDYUKOV                         )
                                                   )
            Plaintiff,                           )
                                                   )
      v.                                         )            Civil Action No. 07-1131(PLF)
                                                   )
U.S. COAST GUARD                          )
                                                   )
            Defendant.                        )
                                                   )
_____)

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, pursuant to Rule 56 of the Federal Rules of Civil Procedure, moves the

Court for summary judgment with regard to plaintiff's FOIA request made to the United

States Coast Guard because there are no material issues of fact and defendant is entitled

to judgment as a matter of law.

In support of this motion, the defendant submits the attached Memorandum of Points

and Authorities, Statement of Material Facts as to Which There Is No Genuine Issue, and

the Declaration of Lieutenant Commander Joseph Kramek, with attached exhibits and

Vaughn index.

Pro se plaintiff will please take note that the assertions contained in the

accompanying declarations and other attachments in support of defendant's motion may be

accepted by the Court as true unless plaintiff submits his own affidavit or other

documentary evidence contradicting the assertions in defendant's declaration and

attachments.  Plaintiff is referred to Local Rule 7(h), Local Rule 56.1 and Federal Rule

56(e), which provide as follows:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

See also Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992) (same).

Because plaintiff is presently incarcerated and proceeding *pro se*, and because this is a dispositive motion, the parties are not bound by Local Civil Rule 7(m) (requiring opposing counsel to confer regarding nondispositive motions). Thus, defendant has not obtained plaintiff's position as to the relief requested in defendant's motion.

Respectfully submitted,

___/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


_/s/_____
DIANE M. SULLIVAN, D. C. BAR # 12765
Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W.
Room E4919
Washington, D.C. 20530
(202) 514-7205

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SERGIY KURDYUKOV<br><br>Plaintiff,<br><br>v.<br><br>U.S. COAST GUARD<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 07-1131(PLF)

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

The United States Coast Guard (USCG) has submitted a declaration by Lieutenant Commander Joseph Kramek, in support of this motion addressing the search for records responsive to plaintiff's FOIA request  (See Declaration of LCDR Kramek (Kramek Decl.)).

### FACTUAL BACKGROUND

The factual background concerning plaintiff's FOIA request is set out in detail in the Statement of Material Facts as to Which There Is No Genuine Issue, which is incorporated herein by reference.

In his FOIA request, plaintiff pro se, Mr. Kurdyukov, sought:

a) All the documents from the Government of Panama, authorizing the U.S. Coast Guard to stop board and search the M/V CHINA BREEZE; b) All the documents from the Government of Panama authorizing the U.S. Coast Guard to detain the M/V CHINA BREEZE on behalf of the Government of Panama; c) All the documents from the Government of Panama authorizing the U.S. Coast Guard to remain on board the M/V CHINA BREEZE and escort the vessel to a U.S. port to conduct a dockside boarding; and d) All the documents showing the authorization from the Government of Panama to

transfer its jurisdiction for prosecution to the U.S. when the M/V CHINA BREEZE entered the U.S. waters. (Attachment A)

(Kramek Decl.), ¶ 2, Attachment A)

In response to his request for documents, the U.S. Coast Guard (USCG) initially searched the electronic databases of the Marine Information and Safety Law Enforcement (MISLE) and the Marine Safety System (MSIS) using the search parameters "Sergiy Kurdyukov" and "China Breeze." No responsive documents were found (Kramek Decl., ¶¶ 4,5). The MISLE's records (Law Enforcement) only date back to 2001 (Id., ¶ 5). Then, the Office of Law Enforcement at Coast Guard Headquarters searched its electronic databases and physical files using the same search parameters (Kramek Decl., ¶ 6). One database contained annual statistical information on drug interdictions in a spreadsheet format, which noted that the "China Breeze" was seized on May 27, 1999 with cocaine aboard (Kramek Decl., ¶ 8, Attachment C). All information contained in the spreadsheet referring to the "China Breeze" has been disclosed. Id at ¶ 9.

The spreadsheet contains annual statistics and data on the type and amount of drugs seized, flag and state of vessel, number of individuals seized, names of the vessels seized, location of the seizure and other information. Id. It does not contain the names of individuals and does not contain the name of Mr. Kurdyukov. Id. However, the spreadsheet notes a "China Breeze" was seized in 1999 (Id., Attachment C).

A search of the worldwide web disclosed two publically available press releases that indicated the China Breeze was seized in May 1999 as a result of joint interagency drug interdiction by the U.S. Customs and Drug Enforcement Administration (Id., ¶ 10). The articles made no mention of USCG involvement. A search of the Pacer database for the

2

United States District Court for the Southern District of Texas disclosed that Mr. Kurdyukov was a defendant in a drug prosecution in the Southern District of Texas (Id., ¶ 11). See U.S. v. Kurdyukov, et al., 48 Fed. Appx. 103, 2002 WL 31016494 (Tex. 2002) cert denied 538 U.S. 909 (2003). Based on this information, the two District Offices, which were most likely to be involved in the interdiction, conducted searches of their electronic databases and physical files (Kramek Decl., ¶¶ 12-15). No additional responsive documents were found. Id.

Additionally, now that it was known that the seizure of the M/V CHINA BREEZE took place in 1999, an information technology specialist searched for responsive records in a legacy law enforcement database that was used between 1991 and 2002. The IT Specialist located 8 pages of response records specific to the M/V CHINA BREEZE, which are being released in their entirety. (Kramek Decl., ¶ 16, Attachment E). No additional responsive documents were found in the database.

Furthermore, the Coast Guard Office of Intelligence and Criminal Investigations was asked to initiate a search for responsive records. The Office of Intelligence and Criminal Investigations located one 1999 electronic data entry document titled "CGIS Case Update Form" and an Intelligence Information Report (IIR), both responsive to Mr. Kurdyukov's FOIA request. [Kramek Decl., ¶ 20, Attachment F). The CGIS Case Update Form is being released in its entirely, with the exception of a singular redaction of the name of a government employee, which is not responsive to plaintiff's request, pursuant to 5 U.S.C. § 552(b)(6) and (b)(7)(c). All eight pages of the Intelligence Information Report are being provided with redactions pursuant to 5 U.S.C. § § 552(b)(2), (b)(6) and (b)(7).

In summary, a reasonably thorough search was conducted of all files and databases

that were reasonably expected to have records responsive to plaintiff's FOIA request, limited responsive documents were located, and the Coast Guard has provided copies of all documents to plaintiff, with the exception of limited redactions, and has not withheld a single page in its entirety.  (See generally, Kramek Decl).

**ARGUMENT**

**I.    Standard of Review**

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, which provides that the "judgment sought shall be rendered forthwith if . . . there is no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c).  Where no genuine dispute exists as to any material fact, summary judgment is required.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  A genuine issue of material fact is one that would change the outcome of the litigation.  Id. at 248.  "The burden on the moving party may be discharged by 'showing' -- that is, pointing out to the [Court] -- that there is an absence of evidence to support the non-moving party's case."  Sweats Fashions, Inc. v. Pannill Knitting Company, Inc., 833 F.2d 1560, 1563 (Fed. Cir. 1987), (quoting Celotex Corp. v. Catrett, 477 U.S. 317 (1986) (emphasis in original)).

Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Thus, to avoid summary judgment, the plaintiff must state specific facts or present some objective evidence that would enable the court to find he is entitled to relief.  In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Supreme Court held that, in responding to a

4

motion for summary judgment, the party who bears the burden of proof on an issue at

trial must "make a sufficient showing on an essential element of [his] case" to establish

a genuine dispute.  Id. at 322-23.

In an opinion issued the same day as Celotex, the Supreme Court attempted to

explain under what circumstances summary judgment is appropriate:

> If the evidence is merely colorable, . . . or is not significantly probative, . . .
> summary judgment may be granted . . . [T]he mere existence of a scintilla
> of evidence in support of the plaintiff's position will be insufficient; there
> must be evidence on which the jury could reasonably find for the plaintiff.

Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50, 252.  See Johnson v. Digital

Equipment Corp., 836 F. Supp. 14, 15 (D.D.C. 1993).  In Celotex, the Supreme Court

further instructed that the "[s]ummary judgment procedure is properly regarded not as a

disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a

whole, which are designed 'to secure the just, speedy and inexpensive determination of

every action.'"  477 U.S. at 327.

FOIA cases are typically resolved on summary judgment.  See Cooper Cameron

Corp. v. Department of Labor, 280 F.3d 539, 543 (5th Cir. 2002).  To discharge its

burden, the agency must prove that each document that falls within the class of

requested records has either been produced, is unidentifiable, or is exempt.  See

National Cable Television Ass'n, Inc. v. Federal Communications Commission, 479 F.2d

183, 186 (D.C. Cir. 1973).  In a FOIA case, the Court may award summary judgment

solely on the basis of information provided in affidavits or declarations when the

affidavits or declarations describe, "the documents and the justifications for

nondisclosure with reasonably specific detail, demonstrate that the information withheld

5

logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).  See also Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  The Court exercises de novo review over FOIA matters, and the burden is on the agency to justify all nondisclosures.  See 5 U.S.C. § 552(a)(4)(B); Department of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989).

"Summary judgment is available to the defendant in a FOIA case, when the agency proves that it has fully discharged its obligations under FOIA." Miller v. United States Dept. of State, 779 F.2d 1378, 1382 (8th Cir. 1985.)  Agencies establish that all of their obligations under the FOIA have been met through declarations and Vaughn indexes.  Thus, when the pleadings, supplemented by affidavits or declarations, show no genuine issue as to any material fact and the defendant is entitled to judgment as a matter of law, summary judgment should be granted to the defendant.  Perry v. Block, 684 F.2d 121 (D.C. Cir. 1982).

## II.    The Search Was Adequate.

The adequacy of an agency's search under the FOIA is "measured by a `standard of reasonableness,'" Weisberg v. United States Dep't of Justice, 705 F.2d 1344, 1352 (D.C. Cir. 1983) (quoting McGehee v. CIA, 697 F.2d 1095, 1100 (D.C. Cir. 1983)), which varies according to the circumstances unique to each case. Id. (quoting Founding Church of Scientology v. Nat'l Sec. Agency, 610 F.2d 824, 834 (D.C. Cir. 1979)).   The reasonableness inquiry does not examine "the fruits of the search," but instead focuses upon "the appropriateness of the methods used to carry out the search." Iturralde v.

6

Comptroller of the Currency, 315 F.3d 311, 315 (D.C. Cir. 2003).  Thus, the fundamental question is not "whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." Steinberg v. United States Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994) (emphasis in original).

At the summary judgment stage, the agency is entitled to prevail if it shows "beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents." Weisberg, 705 F.2d at 1351.  To meet its burden, the agency must proffer affidavits or declarations that shed sufficient light on "the scope and method of the search conducted by the agency."  Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982) (per curiam). Simply put, these statements must be "`relatively detailed' and nonconclusory and must be submitted in good faith."  Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978) (footnote omitted), quoted in Perry, 684 F.2d at 127.  Because agency affidavits enjoy a presumption of good faith, Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981) (per curiam), usually it is only the first two factors that are at issue.

Once the agency has successfully satisfied its prima facie obligation, the requester may rebut by presenting countervailing evidence, including evidence of bad faith. Meeropol, 790 F.2d at 958; Founding Church of Scientology, 610 F.2d at 836. "[P]urely speculative claims about the existence and discoverability of other documents," however, do not suffice to discredit agency affidavits. Ground Saucer Watch, 692 F.2d at 771. Moreover, even in situations where the agency acknowledges that the requested document still exists or once existed, "the failure to turn up this document does not alone render the search inadequate."  Nation Magazine, Washington Bureau v. United States Customs Serv., 71 F.3d 885, 892 n.7 (D.C. Cir. 1995) (citing Perry, 684 F.2d at 128); accord

Iturralde, 315 F.3d at 315 ("[I]t is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate.").  In such situations, an otherwise reasonable search remains adequate unless circumstances reveal "positive indications of overlooked materials."  Founding Church of Scientology, 610 F.2d at 837; accord Valencia-Lucena v. United States Coast Guard, 180 F.3d 321, 327-28 (D.C. Cir. 1999). Thus, the FOIA does not require an agency to "account for documents which the requester has in some way identified if it has made a diligent search for those documents in places in which they might be expected to be found."  Miller v. United States Dep't of State, 779 F.2d 1378, 1385 (8th Cir. 1985), cited with approval in Iturralde, 315 F.3d at 315. Here, there is no indication that materials were overlooked.

The District Court should grant the USCG's summary judgment because the Declaration of Coast Guard Lieutenant Commander Joseph Kramek, submitted in support of this motion, sufficiently explains the procedures used to search for responsive documents, such that no substantial doubt remains as to the efficacy of the search methodology employed by the USCG in responding to plaintiff's FOIA request.  See Iturralde, 315 F.3d at 314-15; Founding Church of Scientology, 610 F.2d at 834-35.

The declaration of LCDR Kramek and attached exhibits are a clear, concise, and nonconclusory description of the search USCG conducted to locate responsive records maintained by the Coast Guard.  The declaration demonstrates that the search was reasonable, thorough, and adequate.  USCG searched for all records identifiable to plaintiff and the "China Breeze" in those systems and files most likely to have responsive records (Kramek Decl., ¶¶ 12, 13, 14, 15). See Church of Scientology, 30 F.3d at 230 (search done of the United States Attorney's Office computerized records systems was adequate).  That

there were very few responsive documents located does not adversely reflect on the adequacy of the search by USCG.  See, Hornbostal v.United States Department of Interior, 305 F. Supp. 21,28 (D.D.C. 2003); see also Jones v. FBI, 41 F.3d 238, 249 (6th Cir. 1994). The searches conducted by USCG were reasonably calculated to locate the relevant records.  Ogesby, 920 F. 2d at 68.  Moreover, agency personnel most likely to know the location of responsive documents conducted the search.  See Valencia-Lucena, 180 F.3d at 326.  In sum, the Coast Guard' s search was both reasonable and thorough, and although there are some redactions, not a single page of responsive information is being withheld in its entirety.

### III.    The Coast Guard has Released All Responsive Documents

### A.    The Spreadsheet Containing Information on Counter-Drug Interdictions.

The spreadsheet entry on the M/V CHINA BREEZE which was directly responsive to plaintiff's FOIA request has been released in its entirety.  The spreadsheet is document # 1 in the Vaughn index.  The remaining spreadsheet entries, which concerned vessels other than the CHINA BREEZE, are not responsive to plaintiff's FOIA request and thus were not disclosed.[1]  The spreadsheet indicates that "China Breeze" was interdicted in 1999.  All responsive information on the spreadsheet concerning this interdiction was released.  The remainder of the spreadsheet is not responsive to plaintiff's FOIA because it does not pertain to him or to the "China Breeze" (Kramek Decl., ¶ 9).  All reasonably segregable

---

[1]  The information on the spreadsheet which was not responsive to plaintiff's FOIA relates to other interdictions conducted in 1999 and is otherwise exempt from disclosure under U.S.C. § 552(b)(2) and (b)(7).  The information taken as a whole could reveal a pattern of drug interdictions and impede their effectiveness (Kramek Decl., ¶ 9). Release of the spreadsheet may disclose techniques of law enforcement investigations

information was released.  Indeed, all information concerning the "China Breeze" was released (Id., Attachment C). See Trans. Pacific Policing Agreement v. U.S. Customs Service, 177 F. 2d 1022, 1028 (D.C. Cir. 1999).

**B.    The CGIS Case Update Form.**

The Office of Intelligence and Criminal Investigations located one 1999 electronic data entry document titled "CGIS Case Update Form" responsive to Mr. Kurdyukov's FOIA request. (Kramek Decl., ¶ 20, Attachment F).  This document is identified in the Vaughn index as document # 3.  The CGIS Case Update Form is being released in its entirely, with the exception of a singular redaction of the name of a government employee, which is not responsive to plaintiff's request, pursuant to 5 U.S.C. § 552(b)(6) and (b)(7)(c).  The name of the government employee is not information that is responsive to plaintiff's FOIA request.

Moreover, Exemption 6 of FOIA permits withholding of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The term "similar files" has been interpreted broadly, and encompasses virtually any record that conveys information about an individual person. See Dep't of State v. Ray, 502 U.S. 164 (1991); Dep't of State v. Washington Post Co. 456 U.S. 595, 601-602 (1982); Reed v. NLRB, 927 F.2d 1249, 1251 (D.C. Cir. 1991), cert. denied, 502 U.S. 1047 (1992); New York Times Co. v. NASA, 920 F.2d 1002, 1006 (D.C. Cir. 1990)(en banc).  Releasing the name of the employee would have the adverse effect of jeopardizing his or her personal privacy.  The employee's privacy interest outweighs any general public interest in disclosure.

---

and procedures. Id.

The employee's name is also being withheld under Exemption 7(C). Exemption 7(C) of the FOIA exempts from mandatory disclosure information compiled for law enforcement purposes when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The Supreme Court has affirmed the broad scope of Exemption 7(C) in National Archives and Records Admin. v. Favish, 541 U.S. 157 (2004) (upholding application of Exemption 7(C) and recognizing substantial privacy interests of federal and non-federal law enforcement officer and other government employees). When a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies." Keys v. U.S. Dept. of Justice, 830 F.2d 337, 340 (D.C. Cir. 1987) (citing Pratt v. Webster, 673 F.2d 408, 418 (D.C. Cir. 1982)). A criminal law enforcement agency must simply show that "the nexus between the agency's activity . . . and its law enforcement duties" is "'based on information sufficient to support at least "a colorable claim" of its rationality.'" Keys, 830 F.2d at 340 (quoting Pratt v. Webster, 673 F.2d 408, 421 (D.C. Cir. 1982)).

Once the agency has demonstrated that the records were compiled for law enforcement purposes, the Court must next consider whether the release of information withheld "could reasonably be expected to constitute an unwarranted invasion of personal privacy." This determination necessitates a balancing of the individual's right to privacy against the public's right of access to information in government files. See, e.g., Favish, S. Ct. at 1580-82; U.S. Dept. of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 776-80 (1989).

The Supreme Court has made clear that "whether disclosure of a private document under Exemption 7(C) is warranted must turn on the nature of the requested

11

document and its relationship to 'the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny,' <u>Department of Air Force v. Rose</u>, 425 U.S. 352, 372 (1976), rather than on the particular purpose for which the document is being requested." <u>Reporter's Committee</u>, 489 U.S. at 772 (internal quotation marks omitted).  Information that does not directly reveal the operations or activities of the government "falls outside the ambit of the public interest that the FOIA was enacted to serve." <u>Id</u>. at 775.  That public interest is to "shed[] light on an agency's performance of its statutory duties." <u>Id</u>. at 772.  The plaintiff bears the burden of establishing that the "public interest in disclosure is both significant and compelling in order to overcome legitimate privacy interests." <u>Perrone v. F.B.I.</u>, 908 F. Supp. 24, 26 (D.D.C. 1995), <u>citing Senate of the Com. of Puerto Rico on Behalf of Judiciary Committee v. Department of Justice</u>, 823 F.2d 574, 588 (D.C. Cir. 1987).

Significantly, it is the "interest of the general public and not that of the private litigant" that matters.  <u>Brown v. Federal Bureau of Investigation</u>, 658 F.2d 71, 75 (2d Cir. 1981).  "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" <u>Davis v. Department of Justice</u>, 968 F.2d 1276, 1282  (D.C. Cir. 1992) (quoting <u>Reporters Committee</u>, 489 U.S. at 773 (internal quotation marks omitted).  Further, courts have explicitly recognized that the privacy interests of third parties mentioned in law enforcement files are  "substantial," while "[t]he public interest in disclosure (of third-party identities)is not just less substantial, it is insubstantial." <u>SafeCard Services, Inc. v. S.E.C.</u>, 926 F.2d 1197, 1205 (D.C. Cir. 1991).  Our court of appeals has held "categorically" that "unless access to names and addresses of private individuals

12

appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." SafeCard Services, 926 F.2d at 1206.

Indeed, the names of law enforcement officers who work on criminal investigations have traditionally been protected against release by Exemption 7(C). Davis, 968 F.2d at 1281; Lesar v. U.S. Dept. of Justice, 636 F.2d 472, 487-88 (D.C. Cir. 1980). With respect to the IIR as its title suggests it is an "Information and Intelligence Report." The report was compiled for law enforcement and intelligence purposes, the purpose being to communicate this information to other law enforcement and intelligence agencies. (Kramek Decl ¶ 19). While the Coast Guard has attempted to release to the greatest extent possible the substance of the IIR, they have withheld information that reveals how and to whom this information was communicated. Id.

## C.    The Intelligence and Information Report.

All eight pages of the Intelligence Information Report ("IIR") are being provided with redactions pursuant to 5 U.S.C. § § 552(b)(2), (b)(6) and (b)(7). The IIR is listed in the Vaughn index as document # 4. As a threshold matter, the vast substance of this intelligence report is being provided, and no pages are being withheld in their entirety.

Pursuant to 5 U.S.C. § 552(b)(2) ("Exemption 2"), the government is not required to disclose records "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Exemption 2 applies primarily to two types of materials: (1) internal agency matters so routine or trivial that they could not be "subject to ... a genuine and significant public interest" and (2) internal agency matters of some public interest "where disclosure may risk circumvention" of statutes or agency regulations.

13

Dept. of Air Force v. Rose, 425 U.S. 352, 369-70 (1976); Schiller v. National Labor Relations Board, 964 F.2d 1205, 1207 (D.C. Cir. 1992); National Treasury Employees Union v. U.S. Customs Service, 802 F.2d 525, 528-30 (D.C. Cir. 1986); Crooker v. Bureau of Alcohol, Tobacco and Firearms, 670 F.2d 1051, 1073-74 (D.C. Cir. 1981); Dorsett v. U.S. Dept. of Treasury, 307 F. Supp.2d 28, 35-36 (D.D.C. 2004); Edmonds v. F.B.I., 272 F. Supp.2d 35, 50 (D.D.C. 2003).

Depending upon the nature of the information, documents will fall within either the "low (b)(2) category" or the "high (b)(2) category." Schiller, 964 F.2d at 1207. "Low (b)(2)" information refers to internal procedures and practices of an agency, where disclosure would constitute an administrative burden unjustified by any genuine and significant public benefit. Martin v. Lauer, 686 F.2d 24, 34 (D.C. Cir. 1982); see also Schiller, 964 F.2d at 1207. "Low (b)(2)" information can be protected if the information qualifies as a personnel rule or internal practice of an agency or is sufficiently related to such a rule or practice. See Schwaner v. Dept. of the Air Force, 898 F.2d 793, 795 (D.C. Cir. 1990); Voinche v. Federal Bureau of Investigation, 46 F. Supp.2d 26, 30 (D.D.C. 1999).

Thus, trivial administrative data, such as file numbers, mail routing stamps, initials, data processing notations, brief references to previous communications, and other like administrative markings are exempt from disclosure. See Coleman v. F.B.I., 13 F. Supp.2d 75, 78-79 (D.D.C. 1998) (citing Lesar v. Dept. of Justice, 636 F.2d 472 (D.C. Cir. 1980)); see also Schiller, 964 F.2d at 1208 (protecting from disclosure internal agency time deadlines and procedures, record keeping directions, instructions on which agency official to contact for assistance, and guidelines on clearance procedures); Nix v.

14

United States, 572 F.2d 998, 1005 (4th Cir. 1978) (protecting cover letters of merely internal significance); Scherer v. Kelley, 584 F.2d 170, 175-78 (7th Cir. 1978) (protecting "file numbers, initials, signature and mail routing stamps, references to interagency transfers, and data processing references"); Voinche, 46 F. Supp.2d at 30 (protecting the file number for an informant and telephone extension of the Public Corruption Unit of the FBI's Criminal Investigation Unit); Wilson v. Dep't of Justice, No. 87-2415-LFO, 1991 WL 111457, at *2 (D.D.C. June 13, 1991) (protecting transmittal slips from low level officials). The notion behind this reasoning is that administrative agencies should not be burdened by responding to requests for trivial information unlikely to be the subject of public interest. See Martin, 686 F.2d at 34.

Here, Exemption 2 (i.e., "low 2") was properly applied to the message addresses, headers, and other routing information which showed from who and to whom the IIR was being sent (e.g., file or tracking numbers) relating to internal agency file control systems, internal agency administrative processes' status queries, the identity of particular types of computer system reports, and to the key stroke and function codes of internal agency computerized property management systems. These markings are purely internal and are utilized by the Coast Guard and other law enforcement agencies to assist in the management and control of its mission. The public has little or no interest in this type of administrative information. Further, knowledge of internal agency message traffic addresses could evidence which law enforcement agencies communicate with one another.

For the same reasons discussed, *supra*, with respect to the CGIS Case Update Forms, pursuant to Exemption 6 and 7(c) names of individuals, including contact

15

information and personal information such as passport numbers, birthdates, and all names of personnel on board the M/V CHINA BREEZE, except Mr. Kurdyukov's name and personal information have been redacted. The privacy interest of these individuals outweighs any general public interest in disclosure. See Dep't of State at 502 U.S. 164.

Pursuant to FOIA Exemption 7, law enforcement sensitive information such as methods, tactics, and information sources have also been redacted. Such information reveals Coast Guard and other agency law enforcement or inter-agency processes, procedures, internal organization and similar matters including methods of communication and to whom this information and intelligence is being communicated. Release of this kind of information would also inhibit the open and frank communications between government employees. The redacted information includes all headings, message headings, message addresses, routine controls, internal system management of messages and other agency information that is not responsive to Mr. Kurdyukov's FOIA request and is entirely germane to the substance of the IIR. This information is thus exempt pursuant to FOIA Exemption 2 and 7.

Exemption 7 of the FOIA protects from disclosure "records or information compiled for law enforcement purposes" under certain circumstances. 5 U.S.C. § 552(b)(7). "[T]he term 'law enforcement purpose' is not limited to criminal investigations but can also include civil investigations and proceedings in its scope." Mittleman v. Office of Personnel Management, 76 F.3d 1240, 1243 (D.C. Cir. 1996), cert. denied, 519 U.S. 1123 (1997). When, however, a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies." Keys v. U.S. Dept. of Justice, 830 F.2d 337, 340 (D.C. Cir. 1987) (citing Pratt v. Webster, 673

16

F.2d 408, 418 (D.C. Cir. 1982)).  A criminal law enforcement agency must simply show that "the nexus between the agency's activity . . . and its law enforcement duties" is "'based on information sufficient to support at least "a colorable claim" of its rationality.'" Keys, 830 F.2d at 340 (quoting Pratt, 673 F.2d at 421).

The Coast Guard is a maritime law enforcement agency with enforcement responsibilities for, among other things, maritime counter-drug operations.  See 14 U.S.C. §  2; 14 U.S.C. § 89; 46 U.S.C. §§ 70501-70507; 10 U.S.C. § 379.  The Coast Guard enforcing maritime counter-drug laws.  Therefore, many of the files created and maintained by the Coast Guard are directly related to law enforcement investigations and operations, such as the IIR in the instant case. Id.  Thus, portions of this document that may compromise the Coast Guard's ability to conduct law enforcement operations are properly withheld under FOIA Exemption 7.

## **CONCLUSION**

Because the Coast Guard has conducted a reasonable and thorough search, and provided copies of all responsive records with the exception of limited redactions for which a proper FOIA exemption exists, summary judgment should be granted in favor of the United States Coast Guard.

Respectfully submitted,

__/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


_/s/_____
DIANE M. SULLIVAN, D. C. BAR # 12765
Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W.
Room E4919
Washington, D.C. 20530
(202) 514-7205

18

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

SERGIY KURDYUKOV                    )
                                    )
                Plaintiff,          )
                                    )
        v.                          )        Civil Action No. 07-1131(PLF)
                                    )
U.S. COAST GUARD                    )
                                    )
                Defendant.          )
                                    )
_____)

## DEFENDANT'S STATEMENT OF MATERIAL FACTS
## AS TO WHICH THERE IS NO ISSUE

In accordance with Rule 7(h), the defendant submits the following Statement of

Material Facts as to Which There Is No Genuine issue:

1.      In his FOIA request, Mr. Kurdyukov specifically requests:

a) All the documents from the Government of Panama, authorizing the U.S.
Coast Guard to stop board and search the M/V CHINA BREEZE; b) All the
documents from the Government of Panama authorizing the U.S. Coast
Guard to detain the M/V CHINA BREEZE on behalf of the Government of
Panama; c) All the documents from the Government of Panama authorizing
the U.S. Coast Guard to remain on board the M/V CHINA BREEZE and
escort the vessel to a U.S. port to conduct a dockside boarding; and d) All
the documents showing the authorization from the Government of Panama
to transfer its jurisdiction for prosecution to the U.S. when the M/V CHINA
BREEZE entered the U.S. waters. (Attachment A)

(Kramek, Decl., ¶ 2)

2.      On or about July 20, 2007, David Taylor and Robin Ouellette of the

Management Programs & Policy Division of the Office of Information Management

(CG-611) at U.S. Coast Guard Headquarters (USCGHQ) advised that Mr. Kurdyukov's

FOIA request had been received by CG-611 in January 2007, assigned a FOIA tracking number, and assigned to the Office of Information Resources for Operations (CG-3851)(Id., ¶ 3).

3.      On September 14, 2007, Mr. Kurdyukov's FOIA appeal letter, dated March 24, 2007, and envelope in which it came was located (Id., ¶ 4, Attachment B).

4.      On or about July 26, 2007, Denise Williams, Chief of the Data Administration Division (CG-3851) at USCGHQ in the Office of Information Resources for Operations (CG-3851), conducted a search in the electronic records of the Marine Information for Safety and Law Enforcement ("MISLE") and the Marine Safety Information System ("MSIS") electronic databases of the USCG.  The search parameters, "Sergiy Kurdyukov" and "China Breeze," were used to ascertain whether the USCG's electronic databases contained information responsive to Mr. Kurdyukov's FOIA request.  These databases did not contain any records responsive to those search parameters (Id., ¶ 6).

5.      It was unlikely that MSIS or MISLE, would have contained the information Mr. Kurdyukov was requesting for several reasons: a) MSIS only contains information on pollution and marine casualty matters; and b) MISLE only dates back to 2001; Mr. Kurdyukov's FOIA request concerns a criminal drug enforcement case investigation which occurred in 1999 (Id., ¶ 5, 16).

6.      On or about July 24, 2007, August 2, 2007, and August 21, 2007, FOIA Specialist Zsatique Ferrell in the Office of Law Enforcement (CG-3RPL), USCGHQ made several search inquiries in CG-3RPL's electronic databases and physical files (Kramek Decl., ¶¶ 7, 8).  She used the search parameters "Sergiy Kurdyukov" and "China Breeze"

2

to ascertain whether her office had any records responsive to Mr. Kurdyukov's FOIA request. Id. One of the databases contains annual statistical information on drug interdictions in a spreadsheet format. This spreadsheet also contains annual statistics and data on the type and amount of drugs seized, flag state of vessel, number of individuals seized, list of vessels' names, the location of seizure, names of Operations under which the drug interdiction took place, involved governments or agencies, and other information. Id.  This database and spreadsheet does not contain individual persons' names and so does not contain information on Mr. Sergiy Kurdyukov. However, this database contained a spreadsheet with information on all seizures and interdiction operations that occurred in 1999. Id.  China Breeze was seized on May 27, 1999 with cocaine aboard; therefore, it was named within the 1999 vessel list as one of the seized vessels (Id., ¶ 8, Attachment C).

   7. The USCG assets involved in this operation were operating under the tactical control of USCG local units and regional offices, to include USCG Districts Seven and Eight, which are located in the Southern Atlantic and Gulf Coast regions (Id., ¶ 13). Some contents of the spreadsheet, document # 1 in the Vaughn index, have been redacted from its original form, but one row on the spreadsheet which contains reasonably segregable information on the M/V China Breeze has been released. Id.  The redacted portions of this document are not responsive to Mr. Sergiy Kurdyukov's request. Id.  The redacted information is not related to Mr. Kuryukov's FOIA request. The redacted information does not refer to Mr. Kuryukov or to the China Breeze nor does it contain any information regarding any authorizations from the government of Panama regarding the China Breeze (Id., ¶ 9).

8.      In addition to not being responsive to Mr. Kurdyukov's request, portions of

the unredacted contents are exempt from release and may be withheld under 5 U.S.C. §

552 (b)(2) and (b)(7).

> a) Exemption 5 U.S.C. § 552 (b)(2) ("High 2") applies because the
> information contained in this spreadsheet taken together as a whole, could
> be misused for unlawful purposes and analysis to circumvent the law or to
> avoid detection.  Specifically, the redacted portions contain vessel and
> navigation/location information which can be analyzed in a manner that
> may reveal USCG patterns of interdiction and law enforcement on the sea.
>  Disclosure of such information would impede the effectiveness of the
> agency's law enforcement and drug interdiction activities.

> b) Exemption 5 U.S.C. § 552(b)(7)(A) applies because while the
> spreadsheet document is not part of a particular case record, if any of the
> vessels on the spreadsheet currently remain the subject of law
> enforcement investigations, release of that information could reasonably be
> expected to interfere with such enforcement proceedings.  In addition, 5
> U.S.C. § 552(b)(7)(E) applies because similarly, the information allocated
> into the spreadsheet, taken as a whole, may reveal patterns of interdiction
> and law enforcement on the sea.  Essentially, this may be disclosing
> techniques for law enforcement investigation or prosecutions.

(Id., ¶ 9)

9.      Ms. Zsatique Ferrell performed a general search of the worldwide web

using the same search parameters as she did for searching her offices databases and

files, "Sergiy Kurdyukov" and "China Breeze."  From this search she found two publicly

available press releases that briefly mentioned the China Breeze as being an involved

subject in a May 1999 joint interagency drug interdiction operation, in which U.S.

Customs and the Drug Enforcement Agency were involved (Id., ¶10, Attachment D).

These press releases, however, make no mention whatsoever of USCG involvement or

Mr. Sergiy Kurdyukov (Id., ¶ 10).

10.     As a result of the information received from Ms. Ferrell in the Office of Law

Enforcement (CG-3RPL), a search of the  electronic database (Pacer) for the United

States District Court for the Southern District of Texas was conducted which revealed

that this operation resulted in a criminal case in the Southern District of Texas [Case No.

4:99-cr-00371] in which Mr. Kurdyukov was a defendant and represented by defense

counsel.  See U.S.A. v. Kurdyukov, et al., 48 Fed. Appx. 103, 2002 WL 31016494 (Tex.

2002), cert. denied, 538 U.S. 909 (2003).  The District Court docket contained over 435

entries covering the period from June 1999 to June 2007, none of which are accessible

online and none of which were located in the possession of USCG as a result of a

search for responsive documents discussed herein (Id., ¶ 11).

11.     Considering all information thus far acquired, it was deduced that in 1999,

the China Breeze was involved in a joint interagency drug interdiction operation near or

in the area of responsibility of USCG District Seven and District Eight.  Throughout the

United States the Coast Guard is divided into "Districts."  Districts have their own

pre-designated area of responsibility and response. See 33 C.F.R. Part 3. For example,

District Seven encompasses the coastal zones of the states of Florida, Georgia, and

South Carolina, and has responsibility over certain pre-designated areas of the territorial

sea. In addition, District Seven has authority and responsibility over the units, cutters,

and members within its area, who are granted authority and jurisdiction to respond and

enforce laws in the territorial, non-territorial waters or high seas (Id., ¶ 12).

12.     Because of the nature and authority of District Offices and their assets, two

District Offices may be involved in the same operation. The Coast Guard Office of

Claims and Litigation believed that either or both District Seven and District Eight Offices

may have been involved in this drug interdiction. Therefore, on or about August 1, 2007,

the Office of Claims and Litigation contacted the Coast Guard Districts Eight and Seven Legal Offices requesting that a FOIA search on this matter be conducted.  The Claims and Litigation office requested any and all information relating to the M/V CHINA BREEZE, Mr. Sergiy Kurdyukov, and a joint interagency drug interdiction operation that occurred in May 1999, in which Customs and the Drug Enforcement Agency were involved. A copy of Mr. Kurdyukov's December 27, 2006 FOIA request was provided to both District Eight and District Seven Legal Offices, which included his requests for documents showing "authorization from the government of Panama." (Id., ¶ 13).

13.    On or about August 2, 2007, the District Eight Legal Office, informed the Claims and Litigation office that between August 1, and August 2, 2007, that members of the District Eight Legal office manually reviewed all of their physical files and searched all of the legal office's electronic files.  District Eight Legal used the search parameters, "China Breeze" and "Sergiy Kurdyukov", to ascertain whether they had documents or records responsive to Mr. Kurdyukov's FOIA request.  Neither the electronic database nor the physical files contained any information responsive to Mr. Kurdyukov's FOIA request (Id., ¶ 14).

14.    On or about August 28, 2007, the USCG District Seven Legal Office, informed the Office of Claims and Litigation that between August 13-28 2007, he and other members of the District Seven Legal office manually reviewed all of their physical files and searched all of the legal office's electronic files.  District Seven Legal used the search parameters, "China Breeze" and "Sergiy Kurdyukov", to ascertain whether they had documents or records responsive to Mr. Kurdyukov's FOIA request.  Neither the electronic database nor the physical files contained any information responsive to Mr.

Kurdyukov's FOIA request.  After a reasonable search, neither the Command Center nor the Response Enforcement Branch could locate any physical or electronic records or files, whatsoever, under the search criteria of "China Breeze" and "Sergiy Kurdyukov." Moreover, the Office of Claims and Litigation was advised that after a period of time U.S. Coast Guard Command Centers either send their records to be destroyed or send their records to the National Archives and Records Administration for safekeeping (Id., ¶ 15).

15.    A reasonably thorough search of all files and records where the records requested by Mr. Kurdyukov could have been or were reasonably expected to be found was conducted between July 2007 and September 2007. The USCG has thoroughly exhausted its likely search targets and has submitted all documents which were in the agency's possession at the time the Freedom of Information Act ("FOIA") request was received.  Mr. Kurdyukov requested information that dates back to 1999. The U.S. Coast Guard's retention policy for records of this nature, specifically Coast Guard missions that involve enforcement of laws or treaties, is such that any and all records or documents, to the extent the USCG ever had any on this particular matter, would have been routinely destroyed before Mr. Kurdyukov's request was received at USCGHQs.  In addition, law enforcement investigation files are only retained for a very short period of time.  See Commandant Instruction M5212.12A (Kramek Decl., ¶ 21, (relevant portions attached as Attachment D) ).

Respectfully submitted,

__/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


_/s/_____
DIANE M. SULLIVAN, D. C. BAR # 12765
Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W.
Room E4919
Washington, D.C. 20530
(202) 514-7205

8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SERGIY KURDYUKOV | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-1131(PLF) |
| | ) | |
| U.S. COAST GUARD | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF JOSEPH KRAMEK

1.    I am a Lieutenant Commander in the United States Coast
Guard, currently serving in the Office of Claims and Litigation,
Coast Guard Headquarters, Washington, D.C.  I have been a
commissioned officer since 1993 and an attorney since 2000.  The
facts set forth below are personally known to me or were made
known to me through my inquiry and/or review of official Coast
Guard records.  This declaration is submitted along with a
Vaughn Index.

2.    Based on my review of Coast Guard records, Mr. Kurdyukov
made a Freedom of Information Act ("FOIA") request, requesting
all documents, records, and information in the USCG's files
pertaining to him or mentioning his name and the motor vessel
("M/V") CHINA BREEZE registered in Panama. [See Attachment A] In
addition, Mr. Kurdyukov specifically requests:

1

a) All the documents from the Government of Panama, authorizing the U.S. Coast Guard to stop board and search the M/V CHINA BREEZE; b) All the documents from the Government of Panama authorizing the U.S. Coast Guard to detain the M/V CHINA BREEZE on behalf of the Government of Panama; c) All the documents from the Government of Panama authorizing the U.S. Coast Guard to remain on board the M/V CHINA BREEZE and escort the vessel to a U.S. port to conduct a dockside boarding; and d) All the documents showing the authorization from the Government of Panama to transfer its jurisdiction for prosecution to the U.S. when the M/V CHINA BREEZE entered the U.S. waters.

3.   Personnel from the Management Programs and Policy Division of the Office of Information Management were contacted to inquire about the status of Mr. Kurdyukov's FOIA request. Mr. Robin Ouellette received Mr. Kurdyukov's FOIA request in January 2007.  The FOIA request was assigned a FOIA tracking number, and then it was referred to the Office of Investigations and Analysis.

4.   Mr. Ouellette, the current FOIA Coordinator of the Office of Information Management, additionally performed a search in his office's FOIA Appeal database. This initial search revealed no record of an administrative FOIA appeal received from Mr. Kurdyukov. However, Mr. Ouellette later located Mr. Kurdyukov's original FOIA appeal letter. [See Attachment B, Personal Declaration of Robin Ouellette].

5.   An initial search in a widely-used USCG electronic database, Marine Information for Safety and Law Enforcement

2

("MISLE")was conducted, using the search terms Sergiy

Kurdyukov," "Kurdyukov," and/or "China Breeze."  MISLE contains

involved subject vessel and involved party information, as well

as law enforcement investigation records, including boarding

information, dating back to 2001. No responsive records were

located in MISLE.

6.    On or about July 26, 2007, Ms. Denise Williams, Chief of

the Data Administration Division of the Office of Investigations

and Analysis at USCGHQs conducted a search in two electronic

databases of the USCG using the search parameters, "Sergiy

Kurdyukov" and "China Breeze" to ascertain whether these USCG

electronic databases contained information responsive to Mr.

Kurdyukov's FOIA request.  Ms. Williams' search of these

databases did not contain any responsive records. Additionally,

several variations of spellings of Mr. Kurdyukov's name and the

M/V CHINA BREEZE were used to conduct additional searches to

confirm that in fact no records had been found in these

databases. The additional searches did not yield any responsive

records.

7.    On or about July 24, 2007, August 2, 2007, and August 21,

2007, FOIA Specialist Zsatique Ferrell in the Office of Law

Enforcement made several searches of her office's law electronic

databases and physical files. [See Attachment C, Personal

Declaration of Zsatique Ferrell].  Ms. Ferrell used the search

parameters "Sergiy Kurdyukov," "Kurdyukov," and "China Breeze"
to ascertain whether her office had any records responsive to
the Mr. Kurdyukov's FOIA request.  After numerous searches in
the Office of Law Enforcement's physical files and electronic
databases Ms. Ferrell did not find any records associated with
the M/V China Breeze or Mr. Kurdyukov. In addition, Ms. Ferrell
contacted the Coast Guard's Department of State Liaison Officer
to ascertain whether he had in his possession any information
pertaining to Mr. Kurdyukov's request, and specifically
requested information on USCG's jurisdictional authority over
the M/V China Breeze. The USCG Liasion Officer at the Department
of State did not locate any responsive records.

8.   Ms. Ferrell, however, did find a spreadsheet containing
annual statistical information on drug interdiction operations;
however, this spreadsheet is not part of a case record or
investigation file.  Rather, the spreadsheet contains annual
statistic and data organized in columns, such as the type and
amount of drugs seized, flag state of vessel, number of
individuals seized, vessels' names, the location of seizure on
the water, names of the operation under which the drug
interdiction operation took place, and a non-inclusive list of
involved entities. The spreadsheet does not contain individuals'
names and thus does not contain information on Mr. Kurdyukov.
The spreadsheet has a 1999 entry containing one row of several

columns of information pertaining to the M/V CHINA BREEZE. The
entry indicates that M/V CHINA BREEZE was stopped and seized by
the USCG and HMS Marlboro, a British Caribbean patrol warship,
in or near the Columbia Basin on May 27, 1999 with over 10,000
tons of cocaine on board. The spread sheet is referred to in the
accompanying Vaughn index as Document # 1.

9.    The entry on the spreadsheet concerning M/V CHINA BREEZE,
which is responsive information, contains reasonably segregated
material which has been provided in its entirety. However,
information on vessels other than the M/V China Breeze, which is
not responsive to Mr. Kurdyukov's request, has been redacted.[1]
While the redacted contents of the 1999 spreadsheet do not
contain information responsive to Mr. Kurdyukov's FOIA request,
the redacted contents are otherwise exempt from release and
additionally being withheld under FOIA Exemption 2 and 7 because
the information contained in this spreadsheet could be misused
for unlawful purposes and analysis to circumvent the law or to
avoid detection.  This is because the information in the
spreadsheet contains the location where law enforcement vessels
interdicted vessels containing illicit narcotics, the amount and
type of narcotics that were seized, the name of the U.S.

---

[1] The redacted information neither refers to Mr. Kurdyukov or to the M/C CHINA
BREEZE, nor does it contain information regarding any authorizations from the
government of Panama regarding the M/V CHINA BREEZE.  Therefore, we have
decided to segregate the material responsive to Mr. Kurdyukov's request.

government vessels or vessel of other nations that participated in the operation, the names and flags of foreign vessels from which drugs were seized, the source of the information contained in the spreadsheet, and other information that could be used to circumvent or avoid law enforcement detection. This same information could also be used to interfere with future law enforcement proceedings, and release could cause some harm in that persons could use it to avoid areas where the Coast Guard and other countries conduct maritime counter-drug operations, show geographic areas where there are a concentration of seizures, show the name and type of law enforcement vessels used in those operations, and times of year that certain surge operations have been conducted in the past. Similarly, this information could also be used to plan the location of future counter-drug law enforcement operations. All of this information is thus exempt under FOIA Exemption 2 and 7.

10. Ms. Ferrell also performed a general search on the public worldwide web regarding the M/V CHINA BREEZE. From this general search she found two publicly-available U.S. Customs press releases (that briefly mentioned the M/V CHINA BREEZE as being an involved subject in a May 1999 joint interagency drug interdiction operation. [See Attachment D]. These press releases indicate the seizure of the M/V CHINA BREEZE was lead by the U.S. Customs, the Drug Enforcement Agency, and the Joint

Interagency Task Force-East, among other government entities.
These press releases however, make no mention of USCG
involvement, nor are they documents held by the Coast Guard, or
otherwise implicated by FOIA.

11.  As a result of the information obtained from Ms. Ferrell's
searches, a search of the court's electronic database (PACER)
was conducted.  This search revealed that the seizure of the M/V
CHINA BREEZE resulted in a criminal case in the United States
District Court for the Southern District of Texas [Case No.
4:99-cr-00371] in which Mr. Kurdyukov was a defendant and
represented by defense counsel.  See U.S.A. v. Kurdyukov, et
al., 48 Fed. Appx. 103, 2002 WL 31016494 (Tex. 2002), cert.
denied, 538 U.S. 909 (2003).  The District Court docket contains
over 435 entries covering the period from June 1999 through June
2007.  The court's docket reveals that Mr. Kurdyukov challenged
jurisdiction at his criminal trial.  The judge's order to his
opinion on jurisdiction is located at docket entry 162.[2]

12.  The information thus far acquired, revealed that in 1999,
the M/V CHINA BREEZE was a subject of a joint interagency drug
interdiction operation near or in the area of responsibility of
USCG regional offices, namely the Seventh District and Eighth
USCG Districts, which are located in the Southern Atlantic and

---

[2] The undersigned was unable to access the associated papers filed with this
docket entry from PACER, as they were not posted for general public access.

Gulf Coast Regions. Throughout the U.S. the Coast Guard is divided into "Districts." See 33 C.F.R. Part 3. Any USCG units or assets involved in this joint interagency operation would likely have been operating under the tactical control and command of USCG local units, regional offices (called "District Offices"), and/or other lead U.S Government entities or agencies.

13.  The Office of Claims and Litigation contacted the Coast Guard's Seventh District and Eighth District Legal Offices requesting a FOIA search on this matter be initiated and conducted for any and all information relating to the M/V CHINA BREEZE, Mr. Sergiy Kurdyukov, and the government of Panama granting USCG jurisdictional authority over the M/V CHINA BREEZE.  A copy of Mr. Kurdyukov's December 27, 2006 FOIA request was also provided to both legal offices.

14.  On or about August 2, 2007, the Eighth District advised that they manually reviewed all of their physical files and searched all their electronic databases and files for responsive records to Mr. Kurdyukov's FOIA request using the search terms "Sergiy Kurdyukov," "Kurdyukov," and "China Breeze." A reasonable and thorough search in electronic databases and files where responsive information would normally be found did not yield any responsive records. The Eight District Legal office additionally advised that no records or files pertaining to Mr.

Sergiy Kurdyukov, M/V CHINA BREEZE, or any authorization given
by Panama to the USCG to have jurisdiction over the M/V CHINA
BREEZE, were forwarded for archiving to the National Archives
and Records Administration, and that law enforcement records of
this nature are routinely destroyed by their offices in
accordance with the USCG policy pursuant to the Information and
Lifecycle Management Manual.  See infra. par. 21.

15.  The Seventh District Legal Office also advised that they
manually reviewed all of their physical files and searched all
of their electronic databases and files for responsive records
to Mr. Kurdyukov's FOIA request using the search terms "Sergiy
Kurdyukov," "Kurdyukov," and "China Breeze."  After a reasonable
and thorough search initiated in the Seventh District, neither a
completed search in the electronic database and files nor the
physical files in which this information would normally be found
yielded any files or records whatsoever responsive to Mr.
Kurdyukov's FOIA request. Nor did the Seventh District locate
any records or files pertaining to Mr. Sergiy Kurdyukov, M/V
CHINA BREEZE, or any authorization given by Panama to the USCG
to have jurisdiction over the M/V CHINA BREEZE, that were
forwarded for archiving to the National Archives and Records
Administration.  The Seventh District advised that law
enforcement records of this nature are routinely destroyed by
their offices in accordance with the USCG policy pursuant to the

Information and Lifecycle Management Manual.  See infra. par. 21.

16.  A search for responsive records pertaining to Mr. Kurdyukov and/or the M/V CHINA BREEZE in a USCG law enforcement electronic database that was formerly used between 1991 and 2002 to document law enforcement activities was also performed by a Coast Guard Information Technology Specialist ("IT").  The IT Specialist was able to acquire data in a readable format which reflects information specific to the M/V CHINA BREEZE, consisting of a total of 8 pages. [See Attachment E, Personal Declaration of Harold Krevait].  The 8 pages of information are being released in their entirety as a matter of agency discretion. These documents are referenced in the Vaughn index as document # 2.  No other responsive information was found in this particular database.

17.  The Coast Guard Office of Intelligence and Criminal Investigations was also asked to initiate a thorough and reasonable search for responsive electronic or physical records or file "Sergiy Kurdyukov," "Kurdyukov," and "China Breeze." The Office of Intelligence and Criminal Investigations caused multiple searches to be conducted which yielded one 1999 electronic data entry document titled "CGIS Case Update Form" and an Intelligence Information Report (IIR), both responsive to

Mr. Kurdyukov's FOIA request. [See Attachment F, Personal Declaration of Marty J. Martinez].

18.   The 1999 electronic data entry document is being provided in its entirety, with the exception of the redaction of a single government employee's name, the content of which is exempt from release and may be withheld under the authority of FOIA Exemption 6 and 7(C).  The redacted document is identified as document 3 in the accompanying Vaughn index. The privacy interests in redacting the name of the government employee outweigh any general public interest in disclosing it because the information being redacted would result in a clearly unwarranted invasion of personal privacy and does not contain any information related to Mr. Kurdyukov's FOIA request. Moreover, release of the government employee's name could potentially result in threats against him or her, as this incident involves a multi-ton seizure of cocaine and numerous criminal defendants who are currently incarcerated as a result of their conviction from this incident.

19.   Mr. Kurdykov is being provided with the four-page Information and Intelligence Report, with all four pages containing redactions.  The redacted document is identified in the accompanying Vaughn index as document # 4.  The redacted portions of the document have been withheld pursuant to FOIA Exemptions 2, 6 and 7.  Pursuant to FOIA Exemption 2 and 7, law

enforcement sensitive information such as methods, tactics, and information sources have been redacted.  The purpose of an Information and Intelligence Report is to communicate information to and between law enforcement and intelligence agencies.  Information that might reveal Coast Guard and other agency law enforcement or inter-agency process, procedure, internal organization and similar matters; including all headings, message headings, message addresses, routine controls, internal system management of messages and other agency information that is not responsive to Mr. Kurdyukov's FOIA request and entirely germane to the substance of the IIR has also been redacted.  This information has the potential to reveal how, to whom, and what the Coast Guard and other law enforcement and intelligent agencies communicate amongst one another and is thus exempt pursuant to FOIA Exemption 2 and 7.

Pursuant to FOIA Exemption 6 and 7(C), the names of both Government employees and non-government employees named in the IIR, including contact information and personal information such as passport numbers, birthdates, and all names of personnel on board the M/V CHINA BREEZE, except Mr. Kurdyukov's name and personal information have been redacted.  As before, this is because the privacy interests in redacting the name of the government employee outweigh any general public interest in disclosing it because the information being redacted would

result in a clearly unwarranted invasion of personal privacy and does not contain any information related to Mr. Kurdyukov's FOIA request. And, as before, this information has the potential to result in threats against this individuals, given that this case involved a multi-ton seizure of cocaine and numerous criminal defendants.

Members of the Office of Intelligence and Criminal Investigations additionally conducted a thorough search at the National Archives and Records Administration Federal Records Center, which yielded no responsive records or reports, whatsoever.

20. A reasonably thorough, in-depth search of all files and records where the records requested by Mr. Kurdyukov could have been found or we would reasonably expect to find was conducted by the USCG between July 2007 and October 2007, and various electronic and physical USCG databases were searched. While multiple searches were initiated, conducted, and completed, and good-faith inquiries were made, very few records regarding Mr. Kurdyukov or the China Breeze were found. We know of no other offices or electronic databases within the USCG where these records, if they exist, are likely to be found. After this extensive search effort, thoroughly exhausting its likely search targets, we are submitting all documents found that are responsive to Mr. Kurdyukov's FOIA request.

21.  We believe the information Mr. Kurdyukov requests no longer
exists or that the USCG never had possession of a large portion
of the information that would be responsive to his request.
Moreover, Mr. Kurdyukov requests information that dates back to
1999.  The information requested relates to a multi-agency law
enforcement case in which Mr. Kurdyukov was convicted by the
U.S. District Court for the Southern District of Texas.  Where
the USCG was not the lead agency, as it appears in this case, it
is common that the USCG would have very limited records in its
possession, if any. The final disposition of this case was
decided in 2000, and there are apparently ample court records
available, including records relating to the United States
assertion of jurisdiction over the M/V CHINA BREEZE.  It is USCG
policy to destroy law enforcement case files (1) one year after
the final disposition of the case, including cases referred to
other agencies or departments for action consisting of
investigation reports, violation reports, correspondence, and
other related documents. USCG Commandant Instruction M5212.12A.
Information and Life Cycle Management Manual. (See Attachment
G).

21. Pursuant to 28 U.S.C. §1746, I, Joseph Kramek, declare under penalty of perjury that the foregoing is true and correct.

Executed on the 14th day of November, 2007.

Joseph E. Kramek
Lieutenant Commander, U.S. Coast Guard
Staff Attorney, Office of Claims & Litigation (CG-0945)
U.S. Coast Guard Headquarters
Washington, D.C.

# ATTACHMENT A

# Sergiy  KURDYUKOV

#83817-079, FCI Fort Dix, P.O.Box 7000, Fort Dix, NJ 08640 (U.S.A.)

U.S. Coast Guard
HQ USCG Commandant
GS 11
Washington, D.C. 20593-0001

December 27, 2006

RE:    **FREEDOM OF INFORMATION / PRIVACY ACT REQUEST**
      United States District Court
      Southern District of Texas
      Houston Division
      Criminal Case No. H-99CR371

    I, Sergiy KURDYUKOV, born February 24, 1961 in Zaporozmie, Ukraine, presently resident at the above mentioned address, hereby request copies of the following documents, pursuant to the Freedom of Information Act, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. If for any reason you chose not to send me any of the documents or papers requested then please furnish me with a *Vaughn Index* as set forth in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir., 1973).

    I am requesting all records, documents, and information you have in your files pertaining to me or mentioning my name and the Motor Vessel "CHINA BREEZE" registered in Panama. I am particularly requesting:
        (1) All the documents from the Government of Panama authorizing the U.S. Coast Guard to stop board and search the M/V CHINA BREEZE.
        (2) All the documents from the Government of Panama authorizing the U.S. Coast Guard to detain the M/V/ CHINA BREEZE on behalf of the Government of Panama.
        (3) All the documents from the Government of Panama authorizing the U.S. Coast Guard to remain on board the M/V CHINA BREEZE and escort the vessel to a U.S. port to conduct a dockside boarding.
        (4) All the documents showing the authorization from the Government of Panama to transfer its jurisdiction for prosecution to the United States when the M/V CHINA BREEZE entered U.S. waters.

    Please consider this is a first-party request under the FOIA, 5 U.S.C. § 552, and as a Privacy Act request, 5 U.S.C. § 552a also.

    In the event that some of the material is considered by you to be exempt from disclosure under both Acts, then please include all segregable portions of documents and the specific exemption you are relying upon to deny disclosure of the excised portions. Please note that in order to avoid disclosure you must claim an appropriate exemption under both Acts.

    I am requesting that you abide by the statutory time within which to make a determination on this request, that being ten (10) working days from your receipt under Section 552(a) (6)(A)(i).

Sergiy KURDYUKOV
USCG Commandant
December 27, 2006
Page 2.

     I request a fee waiver or at least a fee reduction, however, in the event you deny this request foe waiver I hereby agree to pay the fees for search and duplication while retaining my

right to appeal your denial of waiver. The information requested will not be used for any commercial purpose.

     I, Sergiy KURDYUKOV hereby swear under the penalty of perjury that I am requesting all the above information and documents for my personal use.

On this ⎯27⎯ day of December 2006
State of New Jersey
County of Burlington

BEFORE ME, A NOTARY PUBLIC, on this day personally appeared known to me the person whose name is subscribed above and, being by me first duly sworn, declared that the information above is true and correct.

     Given under my hand and seal of office this 27 day of December 2006.

NOTARY PUBLIC ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

SHELBY E. DUNCAN
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 5/26/2011

My commission expires: ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

# ATTACHMENT B

## Sergiy KURDYUKOV

Commandant (CG-611)                                          March 24, 2007
2100 2nd Street, SW
Washington, D.C. 20593-0001
Attn: FOIA/PA

### RE: FOIA/PRIVACY ACT APPEAL, DENIAL OF ACCESS
PURSUANT TO 5 U.S.C. § 552(a) (6); and 5 U.S.C. § 552a

Dear Sir/Madam,

This is an appeal from the denial of records by the U.S. Coast Guard, HQ USCG Commandant, as noted in the attached request for the following reasons and facts:

1. On December 27, 2006, I mailed a request for records to the U.S. Coast Guard, in certified mail, return receipt requested. This request was received by the U.S. Coast Guard on January 8, 2007. A copy of that request is attached to this appeal. I have not received any responsive records, nor have I received a determination on my request.

2. The U.S. Coast Guard has failed to comply with the provisions of the Freedom of Information Act/Privacy regarding release of records.

3. The U.S. Coast Guard has exceeded the statutory time limits for providing the records requested.

Therefore, and for the above reasons and facts, it is evident that the U.S. Coast Guard has denied me access to records and documents to which I am entitled under the statutes. This appeal is being submitted in good faith attempt to obtain compliance by the U.S. Coast Guard to the statutory provisions of the FOIA/PA regarding disclosure and to avoid the costs of litigation.

Please instruct the U.S. Coast Guard to furnish the records as requested. I would also appreciate your compliance with Section 552(a) (6) (A) (ii) regarding the response time to this appeal.

Respectfully submitted,

Sergiy Kurdyukov

# Sergiy KURDYUKOV

**#83817-079, FCI Fort Dix, P.O. Box 7000, Fort Dix, NJ 08640 (U.S.A.)**

U.S. Coast Guard
HQ USCG Commandant
GS 11
Washington, D.C. 20593-0001

December 27, 2006

RE:     **FREEDOM OF INFORMATION / PRIVACY ACT REQUEST**
United States District Court
Southern District of Texas
Houston Division
Criminal Case No. H-99CR371

   I, Sergiy KURDYUKOV, born February 24, 1961 in Zaporozmie, Ukraine, presently resident at the above mentioned address, hereby request copies of the following documents, pursuant to the Freedom of Information Act; 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. If for any reason you chose not to send me any of the documents or papers requested then please furnish me with a *Vaughn Index* as set forth in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir., 1973).

   I am requesting all records, documents, and information you have in your files pertaining to me or mentioning my name and the Motor Vessel "CHINA BREEZE" registered in Panama. I am particularly requesting:
    (1) All the documents from the Government of Panama authorizing the U.S. Coast Guard to stop board and search the M/V CHINA BREEZE.
    (2) All the documents from the Government of Panama authorizing the U.S. Coast Guard to detain the M/V/ CHINA BREEZE on behalf of the Government of Panama.
    (3) All the documents from the Government of Panama authorizing the U.S. Coast Guard to remain on board the M/V CHINA BREEZE and escort the vessel to a U.S. port to conduct a dockside boarding.
    (4) All the documents showing the authorization from the Government of Panama to transfer its jurisdiction for prosecution to the United States when the M/V CHINA BREEZE entered U.S. waters.

   Please consider this is a first-party request under the FOIA, 5 U.S.C. § 552, and as a Privacy Act request, 5 U.S.C. § 552a also.

   In the event that some of the material is considered by you to be exempt from disclosure under both Acts, then please include all segregable portions of documents and the specific exemption you are relying upon to deny disclosure of the excised portions. Please note that in order to avoid disclosure you must claim an appropriate exemption under both Acts.

   I am requesting that you abide by the statutory time within which to make a determination on this request, that being ten (10) working days from your receipt under Section 552(a) (6)(A)(i).

Sergiy KURDYUKOV
USCG Commandant
December 27, 2006
Page 2.

I request a fee waiver or at least a fee reduction, however, in the event you deny this request foe waiver I hereby agree to pay the fees for search and duplication while retaining my

right to appeal your denial of waiver. The information requested will not be used for any commercial purpose.

I, Sergiy KURDYUKOV hereby swear under the penalty of perjury that I am requesting all the above information and documents for my personal use.

On this ___27___ day of December 2006
State of New Jersey
County of Burlington

BEFORE ME, A NOTARY PUBLIC, on this day personally appeared known to me the person whose name is subscribed above and, being by me first duly sworn, declared that the information above is true and correct.

Given under my hand and seal of office this 27 day of December 2006.

NOTARY PUBLIC

SHELBY E. DUNCAN
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 5/26/2011

My commission expires: _____

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

F OIA
U.S. COAST GUARD
HQ USCG COMMANDANT
GS 11
WASHINGTON, D.C. 20593-0001

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Kim Cent
☑ Agent
☐ Addressee

B. Received by ( Printed Name)     C. Date of Delivery
Kim Daniels     1 18 07

D. Is delivery address different from item 1?  ☑ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Certified Mail    ☐ Express Mail
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)     ☐ Yes

2. Article Number
(Transfer from service label)
7005 1160 0000 9099 2454

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

**ATTACHMENT C**

1999

| Surge Operations | Cocaine | Marijuana | Heroin | Arrests | Vessels |
|---|---|---|---|---|---|
| | | | | | |



| CASE # | FDIN | Vessel Name | Date | Vessel Type | Flag State | Drug Type | FDIN Drug Entry | | | | | | Arrests | Vessel Seized |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Cocaine | Marijuana | Hashish | Hashish Oil | Heroin | Other | | |
| 1 | | | | | | | | | | | | | | |
| 2 | | | | | | | | | | | | | | |
| 3 | | | | | | | | | | | | | | |
| 4 | | | | | | | | | | | | | | |
| 5 | | | | | | | | | | | | | | |
| 6 | | | | | | | | | | | | | | |
| 7 | | | | | | | | | | | | | | |
| 8 | | | | | | | | | | | | | | |
| 9 | | | | | | | | | | | | | | |
| 10 | | | | | | | | | | | | | | |
| 11 | | | | | | | | | | | | | | |
| 12 | | | | | | | | | | | | | | |
| 13 | | | | | | | | | | | | | | |
| 14 | | | | | | | | | | | | | | |
| 15 | | | | | | | | | | | | | | |
| 16 | | | | | | | | | | | | | | |
| 17 | | | | | | | | | | | | | | |
| 18 | | | | | | | | | | | | | | |
| 19 | | | | | | | | | | | | | | |
| 20 | | | | | | | | | | | | | | |
| 21 | | | | | | | | | | | | | | |
| 22 | | | | | | | | | | | | | | |
| 23 | | | | | | | | | | | | | | |
| 24 | | | | | | | | | | | | | | |
| 25 | | | | | | | | | | | | | | |
| 26 | | | | | | | | | | | | | | |
| 27 | | | | | | | | | | | | | | |
| 28 | | | | | | | | | | | | | | |
| 29 | | | | | | | | | | | | | | |
| 30 | | | | | | | | | | | | | | |
| 31 | | | | | | | | | | | | | | |
| 32 | | | | | | | | | | | | | | |
| 33 | | | | | | | | | | | | | | |
| 34 | | | | | | | | | | | | | | |
| 35 | | | | | | | | | | | | | | |
| 36 | | | | | | | | | | | | | | |
| 37 | | | | | | | | | | | | | | |
| 38 | | | | | | | | | | | | | | |
| 39 | | | | | | | | | | | | | | |
| 40 | | | | | | | | | | | | | | |
| 41 | | | | | | | | | | | | | | |

| Location | AREA | District/ Operation | Ledet | Seizing Unit | Ionscan | Foreign LE | Info Source | State |
|----------|------|---------------------|-------|--------------|---------|------------|-------------|-------|
| | | | | | | | | |



| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1999096041 | CHINA BREEZE | 05/27/1999 | MV | PM | Cocaine | 10,472.00 | | | | | | 25 | 1 |



| Columbian Basin | L | D7/D8 | X | LEDET, HMS MARLBORO, CGC VIGILANT | YES | UK | D7 OPSUM | CARIB |

# ATTACHMENT D

FOR IMMEDIATE RELEASE TUESDAY, SEPTEMBER 5, 2000

### U.S. CUSTOMS SEIZES MOTOR VESSEL ?SUERTE I?
### AS PART OF OPERATION JOURNEY

HOUSTON, TX -- The motor vessel Suerte I was seized here today by U.S. Customs Service agents and officers when it arrived in port after being at sea the past few weeks. The seizure occurred as part of ?Operation Journey.? The Suerte I was seized under a civil seizure warrant. The vessel is believed to have been destined to carry tons of cocaine as part of the Colombian cocaine smuggling venture revealed by the investigation. The vessel is carrying cargo of hot iron briquets destined for Spain.

This is the third vessel seized in the Houston/Galveston area as part of this intensive investigation. Motor Vessels Cannes and China Breeze were seized in 1999. (At press time, the vessel is to be searched by Customs inspectors and Customs and DEA agents will interview crewmembers). A total of five vessels were seized during Operation Journey.

U.S. Customs and Drug Enforcement Administration (DEA) agents and Joint Interagency Task Force-East (JIATF-East) officers announced a week ago the conclusion of ? Operation Journey,? a two-year multi-national initiative against a Colombian drug transportation organization. That organization used commercial vessels to haul multi-ton loads of cocaine to twelve countries, most of them in Europe and North America. Nearly 25 tons of cocaine, with a street value in Europe as close to $1 billion, were seized. Authorities had arrested 43 individuals as of late August 2000.

Operation Journey culminated during the past two weeks with enforcement actions in Venezuela and Europe. As a result of a collaborative international effort, Venezuelan authorities raided the command-and-control structure of the organization, using roughly 200 anti-drug officers, as well as an array of helicopters, airplanes, and boats.

During the initial raid, Venezuelan authorities arrested Ivan De La Vega and Luis Antonio Navia. De La Vega was arrested pursuant to a provisional arrest warrant prepared by Customs and DEA agents in Houston. Navia is a Cuban national with U.S. residence status. He is a U.S. Customs fugitive wanted on prior federal drug charges. Both were turned over to U.S. authorities. On August 19, U.S. agents flew the pair to the Southern District of Florida, where they face federal drug charges.

As part of the takedown, a U.S. Naval vessel stopped the Suerte I, a Maltese-flagged ship, off the coast of Grenada on August 17. A U.S. boarding party searched the vessel but found no cocaine. However, the vessel was seized as part of the organization?s fleet. The U.S. Coast Guard as part of the JTIAF-East operation escorted Suerte I at sea since August 17 and into the Houston ship channel today.

Several days before the boarding of Suerte I, Venezuelan authorities had encountered two boats enroute to the Suerte I both loaded with cocaine. Several suspects jumped ship and fled into the jungle. Search for these suspects continues.

Meanwhile, Venezuelan authorities assisted by U.S. agents began raiding cocaine storage locations in the Orinoco River Delta. A nighttime raid on the first jungle camp yielded several go-fast boats and communications equipment, but no cocaine. On August 27, authorities raided a second storage site and found 3,900 kilograms of cocaine. Numerous suspects were arrested in this raid. Venezuelan authorities raided a third storage site august 22, and found 2,400 kilograms of cocaine. They found another 2,500 kilograms at a fourth storage camp on August 23. It is believed that the last two shipments were destined for the Suerte I.

During the same time period, authorities in Europe made several arrests. Last week, Greek authorities conducted raids and made eight arrests in connection with shipping firms linked to the Colombian organization. There were also two arrests made in Italy and another made in France.

SEE AUGUST 26, 2000 PRESS RELEASE FOR HISTORY OF OPERATION JOURNEY INVESTIGATION.

Customs and DEA agents worked with authorities from twelve nations and three continents during this investigation. Operation Journey began as separate investigations by the DEA Country Office in Athens, Greece and the Customs Special Agent-in-Charge office in Houston, with major input from European law enforcement agencies and JIATF-East. Over time, numerous domestic and international agencies joined the operation. Eventually, all merged their cases into a single probe. The Justice Department coordinated with Customs, the DEA, and officials from other nations to develop the prosecution strategy to dismantle this organization.

Foreign authorities played critical roles in Operation Journey, making numerous arrests and several large seizures. The operation would not have been possible without the efforts of law enforcement agencies from Albania, Belgium, Colombia, France, Greece, Italy, the Netherlands, Panama, Spain, Great Britain, and Venezuela.

To recap enforcement events occurring in the Houston/Galveston area, the vessel Cannes was seized January 14, 1999, and 3,803 kilograms of cocaine were seized. The vessel China Breeze was seized May 27, 1999, and 3,880 kilograms of cocaine were seized. The vessel Suerte I was seized September 02, 2000. It is suspected this vessel was destined to carry six tons of cocaine seized in Venezuela.

**CONTACT:** U.S. Customs, Public Affairs, (202) 927-8727

**Report Drug Smuggling to
1-800-BE-ALERT or 1-888-NO-DROGA
www.customs.gov**

FOR IMMEDIATE RELEASE Wednesday, September 1st, 1999

# CONTAINER OF FROZEN FRUIT PULP CONCEALS COCAINE

**HOUSTON, TEXAS -** U.S. Customs Inspectors, Agents, and National Guard members searched several containers aboard the motor vessel Astor, resulting in the seizure of 1,562 pounds of cocaine yesterday, August 31, 1999. The street value of the cocaine could be worth up to $70 million depending upon a number of factors, including destination points and quality and purity of the cocaine.

The enforcement team targeted the "Astor," a Netherlands flag ship, which arrived at the port of Houston direct from La Guardia, Venezuela. Fifteen containers were put through a mobile x-ray machine . One refrigerated container was then manually searched. That container was loaded with over two thousand boxes of frozen fruit pulp. Search of several boxes determined that the boxes contained packaged cocaine. Officers allowed the shipment to thaw so that the boxes could be searched thoroughly. Late Tuesday, the inspection was completed.

Each box contained twelve plastic bags, 7 x 11 inches by 1 inch thickness. Within that plastic bag of fruit pulp was a 1.3 pound package of cocaine wrapped in clear plastic. Some boxes or bags were marked with various identifying "logos" or symbols. All the cocaine was found in guava fruit pulp. Other berry fruit pulp was contained in the remainder of the shipment.

The Customs Office of Investigations is investigating the smuggling venture. No arrests have been made. "Customs Agents are looking into similar seizures made at other U.S. ports in recent weeks," said Enrique Castro, Assistant Special Agent in Charge.

Several motor vessels have been searched at Houston and East Texas Gulf Coast ports this year, resulting in thousands of pounds of cocaine being seized by Customs Inspectors and Agents. Two such cargo bearing vessels, the Cannes and the China Breeze, were seized by Customs and subsequently sold at auction in the past few months.

"The fact that Customs officers and agents have seized approximately 13,000 pounds of cocaine at the port of Houston so far this year emphasizes the necessity of not only being more diligent and vigilant, but also the value of now having technology to augment our enforcement effort," said Paul Rimmer, port director for Customs. DEA and Customs Agents seized over 10,000 pounds of cocaine in Galveston in June 1999.

In another frozen food shipment, Customs Inspectors at Miami, FL found more than a ton of cocaine stuffed between ice packs and fish filets in an air cargo shipment from Ecuador earlier this week.

# # # #

**Report Drug Smuggling to 1-800-BE-ALERT**

Contact: Judy Turner @ (713) 313-2825.

# ATTACHMENT E

| FieldName | CharCode | CodeDescript | Priority | DocNo | HullNumber | LloydsNo | EstLength | VslType | HailingPort | ColorSuper |
|-----------|----------|--------------|----------|-------|------------|----------|-----------|---------|-------------|------------|
| DVslType | MFO | FREIGHTER, OCEAN-GOING | 999 | 27335X | | | 510 | MFO | PANAMA | WHT |
| VslType | MFO | FREIGHTER, OCEAN-GOING | 999 | 27335X | | | 510 | MFO | PANAMA | WHT |

| ColorHull | VslLength | NextPort | NextPortDate | LastPort | HoldCapUnits | ColorDeck | ColorTrim | EngineQty | EngineType | Flag |
|-----------|-----------|----------|--------------|----------|--------------|-----------|-----------|-----------|------------|------|
| RED | 510 | PORTUGAL, SPAIN | | | | | | 0 | | PM |
| RED | 510 | PORTUGAL, SPAIN | | | | | | 0 | | PM |



| HiddenCompar | HoldCapacty | HomePort | LastPortDate | Make | Model | OwnerName | VesselName | VslSoundex | IRCS | StateNo |
|---|---|---|---|---|---|---|---|---|---|---|
| Y | 0 | | | | BULK CARRIER | | CHINA BREEZE | C5162 | | |
| Y | 0 | | | | BULK CARRIER | | CHINA BREEZE | C5162 | | |

| IdNumber__1 | IdNumber__2 | IdNumber__3 | NumberType__1 | NumberType__2 | NumberType__3 | EventGroupId | EventType | EventDate |
|---|---|---|---|---|---|---|---|---|
| | | | | | | 1999201210301384 | B | 1999-05-28 |
| | | | | | | 1999201210301384 | B | 1999-05-28 |

| BeamNumber | ProcessMeth | DurationHrs | NumberPOB | StartDate | StartTime | EventGroupId | OpCon | DurationMin | PerfUnitType |
|---|---|---|---|---|---|---|---|---|---|
| | | 99 | 25 | 1999-05-28 | 0 | 1999201210301384 | 2075210 | 59 | WMEC |
| | | 99 | 25 | 1999-05-28 | 0 | 1999201210301384 | 2075210 | 59 | WMEC |

| Latitude | Longitude | TransmitFlg | State | ForeignAgree | EndDate | SerialNumber__1 | SerialNumber__2 | SerialNumber__3 |
|---|---|---|---|---|---|---|---|---|
| 1607.20 | 6636.60 | 3 | IT | J | 1999-06-01 | | | |
| 1607.20 | 6636.60 | 3 | IT | J | 1999-06-01 | | | |

| SerialNumber__4 | SerialNumber__5 | Type__1 | Type__2 | Type__3 | Type__4 | Type__5 | WeaponOnBord | PriMissn | Yr | OPFAC |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | N | ELT DRUGS-SURF | 1999 | 2012103 |
| | | | | | | | N | ELT DRUGS-SURF | 1999 | 2012103 |



| SeqntNumber | StArea1 | StArea2 | StArea3 | StArea4 | LocalAreaNa |
|---|---|---|---|---|---|
| 1384 A | | D7 | | | D7 |
| 1384 A | | D7 | | | D7 |

# ATTACHMENT F



# CGIS Case Update Form

| Seq: | Year: | Rgn: | ROI: | Cat: | Proj: |
|------|-------|------|------|------|-------|
| 0311 | 99 | GGU | none | 21 | GK |

Subject, Last: CHINA BREEZE (MFO)    First: L738044?    MI:    SSN:

Subject, Unit:

| Date Inv. Opened: | Status: |
|---|---|
| 19990531 | Closed |

EMPLID:    Character: CRIMINAL-DRUG TRAFFICKING (COCAINE)    RateRank:    DOB:    POB: PANAMA

Date of Last Report: 19990802    Case Agent:

☐ Include in Sexual Assault Report

Misc Number:

DHS Hotline Case Number:    DHS Hotline Case Status:

None

FRC Accession Number:    Federal Record

FRC Box Number:    Center Case

Storage

FRC Location Code    of    Identification

Spot Report Number:

None

NCIC Number

Remarks:

INVESTIGATION INTO THE SUBJECT VESSEL, WHICH WAS DISCOVERED BY A USCG LAW ENFORCEMENT DETACHMENT TO BE
CARRYING 8,800 LBS. OF COCAINE EN ROUTE TO GALVESTON, TEXAS, FROM PUERTO RICO, SCHEDULED FOR DOCKING IN
GALVESTON EITHER 05 OR 06 JUNE 1999. WHEN THE SHIP WAS IN THE KEY WEST AREA ON 02 JUNE 1999, A DEA HOUSTON AGENT
WAS PLANNED TO EMBARK THE VESSEL. UPON SEARCH, THE COCAINE WAS FOUND IN A SEWAGE TANK ONBOARD THE VESSEL.
THE COCAINE WAS ALLEGED TO BE EN ROUTE TO EUROPE. A USCGC INTERCEPTED THE VESSEL IN THE GULF. CASE CLOSED.

**[Last Names]**

Co-Subject #1:
Co-Subject #2:
Co-Subject #3:
Co-Subject #4:
Co-Subject #5:
Co-Subject #6:
Co-Subject #7:
Co-Subject #8:
Co-Subject #9:
Co-Subject #10:
Co-Subject #11:
Co-Subject #12:
Co-Subject #13:
Co-Subject #14:
Co-Subject #15:

Adjudication/Disposition:    Rcvd:

Victim #1:
Victim #2:
Victim #3:
Victim #4:
Victim #5:

| Find Record | Print Record | New Case |
|---|---|---|
| Open Subjects | Open Victims | Exit |

Ex. 2

# ATTACHMENT G



Ex. 2, 5

TEXT:

Ex. 2, 5

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
DEPARTMENT OF TRANSPORTATION
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Ex. 2, 5

SUMMARY:        M/V CHINA BREEZE (PM) WAS BOARDED BY USCG RESULTING
IN THE SEIZURE OF 4,760KGS OF COCAINE. ENCLOSURES.

TEXT:

1. ON 27 MAY 99, M/V CHINA BREEZE (PM) WA_____ THE
VSL WAS BOARDED BY A USCG LEDET AND A BOARDING TEAM FROM A
USCG CUTTER.  THE BOARDING TEAM DISCOVERED APPROX 200
PACKAGES OF A SUBSTANCE THAT TESTED POSITIVE FOR COCAINE IN
AN EMPTY SEWAGE HOLDING TANK.  AFTER DISCOVERING THE COCAINE
A COMMANDANT 3N0 WAS GRANTED TO ESCORT THE VSL TO HOUSTON,
TX TO ENFORCE US LAW.

2. THE M/V CHINA BREEZE (PM)

Ex. 7

Ex. 7

THE COCAINE WAS LOADED ONTO THE M/V
CHINA BREEZE USING A BOOM ON THE PORT SIDE OF THE VSL.  THE
COCAINE WAS THEN MOVED VIA PULLEY SYSTEM (POSS BLOCK AND
TACKLE) UP TWO LADDERS, THEN PLACED INTO THE SEWAGE HOLDING
TANK.  THE ONLOAD TOOK APPROXIMATELY 3 HOURS TO COMPLETE
WITH 7-8 CREWMEMBERS ASSISTING.
3. THE TANK THE COCAINE WAS CONCEALED IN MEASURES 6'8" BY
31'6" BY 11'2".  THE TWO ACCESS HATCHES TO THE TANK WERE
PAINTED RECENTLY WITH BLACK PAINT AND SEVERAL OF THE BOLTS ON
EACH HATCH WERE TACK WELDED.  THE COCAINE WAS STACKED TWO
HIGH ON THE DECK WHICH APPEARED TO BE A VOID IN THE TANK THAT
HAD BEEN CUT OUT.  THE COCAINE WAS WRAPPED WITH AN
OUTER LAYER OF BLACK PLASTIC BAGS (POSS SPRAY PAINTED RICE
BAGS) WITH A POLYPROPYLENE NET AROUND IT WITH A SHACKLE
ATTACHED TO THE LINE.  INSIDE THE PACKAGES WERE SEVERAL
INDIVIDUALLY WRAPPED BRICKS (ONE OF THE PACKAGES THAT WAS
TESTED HAD 10 BRICKS IN IT) TIGHTLY WRAPPED WITH CLEAR
CELLOPHANE.  MARKINGS ON THE OUTER BLACK BAGS WERE
"TREBOL", "DIAMONT", "DIAMOND", "7" AND "7E".  10 OF THE 194
PACKAGES WERE REMOVED AND WEIGHED, EACH WEIGHING 24.5KGS.
4.

ONLOAD THE VSL WAS GOING TO HEAD TO THE AZORES ISLANDS
FOR FUEL.  AFTER FUELING THE VSL WAS GOING TO TRAVEL NORTH
AROUND ENGLAND/SCOTLAND (VICE GOING THROUGH THE ENGLISH
CHANNEL) TO A RENDEZVOUS POSITION OF THE COAST OF THE
NETHERLANDS.

5. THE VSL ARRIVED DOCK SIDE AT PIER 27 IN GALVESTON, TX ON 06
JUN 99.  DEA ARRESTED 6 CREWMEMBERS, WHILE INS DETAINED THE
REMAINING 19 CREWMEMBERS.
6. VESSEL INFORMATION -
NAME    -    CHINA BREEZE
FLAG    -    PANAMA
LOA     -    510FT
TYPE    -    BULK CARGO
COLOR   -    RED HULL, WHT S/S,
DOCNR   -    7380447
IRCS    -    3FPC8
ENGINE  -    DIESEL
7.  PERSONNEL ABOARD
NAME (NATIONALITY)

| | | DOB | PASSPORT | |
|---|---|---|---|---|
| A. SERGIY ((KURDYUKOV)) | (UP) | 24FEB61 | 052378 | CAPTAIN |
| B. | (UP) | | | CHIEF OFFICER |
| C. | (UP) | | | 2ND OFFICER |
| D. | (GR) | | | 3RD OFFICER |



E.  ▬▬▬▬▬▬▬▬▬▬▬▬
F.  ▬▬▬▬▬▬▬▬▬▬▬  (UP)
G.  ▬▬▬▬▬▬▬▬▬▬  (UP)                    RADIO OFFICER
H.  ▬▬▬▬▬▬▬  (GR)                       CHIEF OFFICER
I.  ▬▬▬▬▬▬▬▬▬▬▬ ) (UP)                  2ND ENGINEER
J.  ▬▬▬▬▬▬▬▬  (UP)                      3RD ENGINEER
K.  ▬▬▬▬▬▬▬▬  (UP)                      4TH ENGINEER
L.  ▬▬▬▬▬▬  (UP)                        BOSUN
M.  ▬▬▬▬▬▬▬▬ ) (UP)                     SEAMAN
N.  ▬▬▬▬▬▬▬▬▬▬  (UP)                    SEAMAN
O.  ▬▬▬▬▬▬▬▬  (UP)                      SEAMAN
P.  ▬▬▬▬▬▬▬▬ ) (GR)                     SEAMAN
Q.  ▬▬▬▬▬▬▬  (PM)                       SEAMAN
R.  ▬▬▬▬▬▬▬  (UP)                       SEAMAN
S.  ▬▬▬▬▬▬▬  (UP)
T.  ▬▬▬▬▬▬▬  (UP)                       OILER
U.  ▬▬▬▬▬▬▬▬▬  (UP)                     OILER
V.  ▬▬▬▬▬▬▬  (UP)                       OILER
W.  ▬▬▬▬▬▬  (UP)
X.  ▬▬▬▬▬▬▬  (GR)                       WELDER
Y.  ▬▬▬▬▬  (UP)                         CHIEF COOK
8.  ELECTRONICS                         ASSISTANT COOK
                                        MESSBOY
A.    FURUNO GPS
B.    GMDSS INMARSAT; MODEL - IME7001
C.    OLIVETTI INMARSAT FAX; FAXNBR - 761864111
D.    NERA INMARSAT PHONE; PHNBR - 761864110
9.    PHOTO TITLING LOG -
ALL PHOTOS WERE TAKEN WITH A DIGITAL CAMERA, APPROXIMATE
DISTANCE 01 - 1000 YARDS, DAYTIME/BRIGHT SUNLIGHT
IMAGE 01 - M/V CHINA BREEZE
IMAGE 02 -
IMAGE 03 -
IMAGE 04 - SERGIY KURDYUKOV
IMAGE 05 -
IMAGE 06 -
IMAGE 07 -
IMAGE 08 -
IMAGE 09 -
IMAGE 10 -
IMAGE 11 -
IMAGE 12 -
IMAGE 13 -
IMAGE 14 -
IMAGE 15 -
IMAGE 16 -
IMAGE 17 -
IMAGE 18 -
IMAGE 19 -
IMAGE 20 -

Ex. 6

IMAGE 21 - ███████████████
IMAGE 22 - █████████████████
IMAGE 23 - ██████████████
IMAGE 24 - ████████████████                *Ex. 6*
IMAGE 25 - ████████████████
IMAGE 26 - ██████████
IMAGE 27 - BALES IN THE COMPARTMENT
IMAGE 28 - ANOTHER PICTURE OF THE BALES
IMAGE 29 - BRICKS OF COCAINE
IMAGE 30 - LINE AND SHACKLE FROM A BALE
IMAGE 31 - OUTER WRAPPING OF A BALE MARKED "7"
IMAGE 32 - TANK THE COCAINE WAS HIDDEN
COMMENTS:  (FIELD COMMENTS) - █████████████████████████
██████ POC FOR THIS REPORT IS ████████████████████████     *Ex. 2*
INSTR: U.S. NO. █████████████████
PREP: 4-71107.
ENCL: TO FOLLOW: 1 ENCLOSURE TO BE TRANSMITTED DIGITALLY.
1. PHOTOGRAPHY:  M/V CHINA BREEZE (U), 990528, DIGITAL, 32 IMAGES.
ACQ: CARIBBEAN SEA/GULF OF MEXICO (990528).
DISSEM: SENT TO: ██████ (W/ENCL).
WARNING:
███████████  ████████████████████████████               *Ex. 2, 5*

HEADER:
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
██████████  ()
< ██████ >
< ███████ >
< ██████████ >
< ███████ >
< ████████████ >
< ██████████ >
< ████████ >
███████████████
< From > ███████████████████
< To > ████████████████
████████████████████████
████████████████████
███████████████████████                    *Ex. 2, 5*

**Kurdyukov FOIA**
**Vaughn Index**

| Document Number | Total/Redacted / Withheld Pages | Custodian | Description | Exemption(s) Claimed |
|---|---|---|---|---|
| 1 | 4/4/0 | CG-5311 | Spreadsheet Containing Annual Statistical Information on Maritime Counter-Drug Interdiction Operations | Release information pertaining to CHINA BREEZE; Redacted information pertaining to other vessel interdictions. b(2); (b)(7). |
| 2) | 8/0/0 | CG-5311 | Coast Guard Law Enforcement Information System database records. | Released. |
| 3 | 1/1/0 | CGIS | CGIS Case Update Form | (b)6; (b)(7). |
| 4 | 4/4/0 | CGIS | Information Report of CHINA BREEZE boarding and cocaine seizure. | (b)(2); (b)(6); (b)(7). |