# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SERGIY KURDYUKOV, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 07-1131 (RBW) |
| UNITED STATES COAST GUARD, | : | |
| Defendant. | : | |

## <u>MEMORANDUM OPINION</u>

This matter is before the Court on the defendant's motion for summary judgment. Having considered the motion, the plaintiff's opposition, and the entire record of this case, the Court grants the motion in part and denies it in part without prejudice.

## I.  BACKGROUND

On December 27, 2006, the plaintiff submitted a request to the United States Coast Guard ("Coast Guard") under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552 (2006). *See* Complaint ("Compl.") at 5 (page number designated by the Court).  The plaintiff's FOIA request sought "all records, documents, and information [it has] in [its] files pertaining to [the plaintiff] or mentioning [his] name and the Motor Vessel 'CHINA BREEZE' registered in Panama."  Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment ("Def.'s Mem."), Declaration of Joseph Kramek ("Kramek Decl."), Attachment ("Attach.") A (December 27, 2006 Freedom of Information/Privacy Act Request). Specifically, the plaintiff requested:

(1) All the documents from the Government of Panama authorizing the U.S. Coast Guard to stop[,] board and search the M/V CHINA BREEZE.

(2) All the documents from the Government of Panama authorizing the U.S. Coast Guard to detain the M/V CHINA BREEZE on behalf of the Government of Panama.

(3) All the documents from the Government of Panama authorizing the U.S. Coast Guard to remain on board the M/V CHINA BREEZE and escort the vessel to a U.S. port to conduct a dockside boarding.

(4) All the documents showing the authorization from the Government of Panama to transfer its jurisdiction for prosecution to the United States when the M/V CHINA BREEZE entered U.S. waters.

*Id.*, Attach. A at 1. Staff at the Coast Guard's Office of Law Enforcement assigned the request a tracking number, CG FOIA 07-0627. *Id.* ¶ 3; *see* Def.'s Mem., Declaration of Zsatique L. Ferrell ("Ferrell Decl."), Enclosure ("Encl.") A (August 1, 2007 letter from Z.L. Ferrell, FOIA Specialist, Office of Law Enforcement).

Searches of files maintained by the Data Administration Division of the Office of Investigations and Analysis and the Coast Guard's Seventh District and Eighth District Legal Offices yielded no responsive records. Def.'s Mem., Kramek Decl. ¶¶ 5-6, 14-15. However, located in the Office of Law Enforcement was "a spreadsheet containing annual statistical information on drug interdiction operations," including "a 1999 entry containing one row of several columns of information pertaining to the M/V CHINA BREEZE." *Id.* ¶ 8. The Coast Guard released to the plaintiff the spreadsheet entry pertaining to the M/V CHINA BREEZE in its entirety and redacted from the spreadsheet all information pertaining to other vessels. *Id.* ¶ 9. In addition, a search of a law enforcement electronic database in use between 1991 and 2000 yielded eight pages of "data in a readable format [containing] information specific to the M/V CHINA BREEZE," all of which were released to the plaintiff in their entirety at the Coast

Guard's discretion.  *Id.* ¶ 16.  Lastly, the Coast Guard's Office of Intelligence and Criminal

Investigations located "one 1999 electronic data entry titled 'CGIS Case Update Form' and an

Intelligence Information Report (IIR), both responsive to [the plaintiff's] FOIA request."  *Id.* ¶

17.  Both were released to the plaintiff in redacted form.  *Id.* ¶¶ 18-19.

     In this action, the plaintiff alleges that the Coast Guard has refused to disclose the

information he requests and thus has violated the FOIA.  Compl. at 5.  He demands release of all

the requested records and an award of costs and attorney fees.  *Id.*

## II.  DISCUSSION

### A.  Summary Judgment in a FOIA Case

     The Court may grant a motion for summary judgment if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with affidavits or declarations, show

that there is no genuine issue of material fact and that the moving party is entitled to judgment as

a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the burden of demonstrating the

absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Factual assertions in the moving party's affidavits or declarations may be accepted as true unless

the opposing party submits his own affidavits or declarations or documentary evidence to the

contrary.  *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).

     In a FOIA case, the Court may grant summary judgment based on the information

provided in affidavits or declarations when they describe "the documents and the justifications

for nondisclosure with reasonably specific detail, demonstrate that the information withheld

logically falls within the claimed exemption, and are not controverted by either contrary

evidence in the record nor by evidence of agency bad faith."  *Military Audit Project v. Casey*,

656 F.2d 724, 738 (D.C. Cir. 1981); *see also Hertzberg v. Veneman*, 273 F. Supp. 2d 67, 74

(D.D.C. 2003).  Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. Central Intelligence Agency*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

### B.  The Coast Guard's Searches for Responsive Records

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. United States Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)); *Campbell v. United States Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998).  The agency bears the burden of showing that its search was reasonably calculated to uncover all relevant documents.  *Steinberg v. United States Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994).  To meet its burden, the agency may submit affidavits or declarations explaining in reasonable detail the scope and method of the agency's search.  *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982).  In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA.  *Id*. at 127.  However, if the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper."  *Truitt v. Dep't of State*, 897 F.2d at 542.

It appears that the Office of Claims and Litigation (CG-0945) at the Coast Guard's Washington, D.C. Headquarters coordinated the processing of the plaintiff's FOIA request.  The defendant declares that "[a] reasonably thorough, in-depth search of all files and records where the records requested by [the plaintiff] could have been found or [that the Coast Guard] would

reasonably expect to find was conducted by the [Coast Guard] between July 2007 and October 2007 where various electronic and physical databases were searched." Def.'s Mem., Kramek Decl. ¶ 20.  According to the defendant, there are "no other [known] offices or electronic databases within the [Coast Guard] where these records, if they exist, are likely to be found." *Id.*

### 1. The Office of Information Management (CG-611)

The Management Programs and Policy Division of the Office of Information Management (CG-611) at the Coast Guard's Washington, D.C. Headquarters "maintains a physical/manual record and electronic database of all FOIA requests that were either (1) sent by the requester directly to CG-611 and, in turn, assigned to another [Coast Guard] unit for processing; or (2) sent by the requester to another [Coast Guard] unit and subsequently forwarded to [Headquarters] for processing." Def.'s Mem., Declaration of Robin D. Ouellette ("Ouellette Decl.") ¶ 2.  The Coast Guard unit to which a FOIA request is assigned "processes the FOIA request and conducts the searches for responsive records and documents." *Id.*  Such searches may include "communicating and cooperating with other [Coast Guard] offices to acquire records which might be voluminous or diverse in nature." *Id.*  CG-611 staff initially assigned the plaintiff's FOIA request to the Data Administration Division of the Office for Information Resources for Operations (CG-3851) on January 18, 2007.  *Id.* ¶ 3.

### 2. The Office of Investigations and Analysis (CG-5453)

The Office of Investigations and Analysis (CG-5453, formerly the Office of Information Resources for Operations, CG-3851) "maintains electronic databases of marine casualty and pollution accidents." Def.'s Mem., Declaration of Harold Krevait ("Krevait Decl.") ¶ 2.  These databases include the Marine Information for Safety and Law Enforcement ("MISLE") and the Marine Safety Information System ("MSIS").  *See id.* (introduction).  The MISLE "contains

information on various types of law enforcement activities, pollution enforcement activities, marine casualties, party information, and vessel information." *Id.* ¶ 2.  The MISLE records date back to 2001; the MSIS electronic records date back to 1969.  *Id.*  One searches these databases "by activity number/case number, vessel name, subject name, facility name and incident dates." *Id.*

Upon receipt and review of the plaintiff's FOIA request, staff at CG-3851 returned the request to the Office of Information Management (CG-611) with a recommendation that its staff reassign the request to the Office of Law Enforcement (CG-3RPL).  *Id.* ¶ 3.  It was determined that the request referred to law enforcement records and the Office of Information Resources for Operations (CG-3851) did not maintain such records.  *Id.* ¶¶ 3-4.  Notwithstanding this referral recommendation, on January 19, 2007, CG-3851 staff "searched the Coast Guard's MISLE and MSIS databases using the search parameters of the vessel's name 'CHINA BREEZE' and 'Sergiy Kurdyukov' to ascertain whether or not the [Coast Guard] had any documents responsive to [the plaintiff's] FOIA request."  *Id.* ¶ 4.  Neither database contained responsive records.  *Id.* Nor did subsequent searches on July 26, 2007 and October 18, 2007, using variants of the spelling of the plaintiff's name to locate responsive records.  *Id.* ¶¶ 4-5.

### 3.  The Office of Law Enforcement (CG-3RPL)

The Office of Law Enforcement at the Coast Guard Washington, D.C. Headquarters (CG-3RPL) "maintains an electronic and physical database of agency manuals, drug statistics, FOIA case files, and other case files" relevant to its operations.  Ferrell Decl. ¶ 2.  Electronic database records date back to 1994; the physical files, including FOIA files, date back to 1989.  *Id.* "These databases are searchable by year, title and/or subject."  *Id.*

The Office of Law Enforcement received the plaintiff's FOIA request from the Office of Investigations and Analysis on July 23, 2007.  *Id.* ¶ 2.  On August 2, 2007, staff of that office conducted a search of its electronic database, drug statistics database and spreadsheets, and Coast Guard MISLE database using the search parameters of 'Surgiy [sic] Kurdyukov' and 'China Breeze.'"  *Id*. ¶ 3.  "Within the drug statistics database and spreadsheet," staff located "information relating to a drug interdiction and seizure of the China Breeze on May 27, 1999 by [Coast Guard] Units in Districts Seven and Eight."  *Id.*  The spreadsheet also contained "annual statistics and data on the types and amount of drugs seized, number of individuals seized, vessels' names, the location of seizure, and involved units."  *Id.*  A physical search of a CG-3RPL file cabinet yielded no records pertaining to the plaintiff or the "China Breeze."  *Id.* ¶ 4.

On July 24, 2007, staff "conducted a generic internet search in Google using the search parameter 'China Breeze motor vessel.'"  *Id*. ¶ 5.  Located were two press releases on a non-Coast Guard website (www.cbg.gov) which mentioned the M/V China Breeze "as being a subject in a joint interagency drug operation during 1999, between [the United States] Customs [Service] and the Drug Enforcement Administration."  *Id.*  The spreadsheet and press releases were forwarded to the Coast Guard's Office of Claims and Litigation.[1]  *Id.* ¶¶ 3, 5.

Office of Law Enforcement staff also "contacted the Coast Guard's Department of State Liaison Officer to ascertain whether he had in his possession any information pertaining to Mr. Kurdyukov's request."  Kramek Decl. ¶ 7.  Specifically, staff requested "information on the [Coast Guard's] jurisdictional authority over the M/V China Breeze."  *Id.*  The Liaison Officer did not locate any responsive records.  *Id.*

---

[1]        The *Vaughn* index refers to the spreadsheet as Document #1.  Kramek Decl. ¶ 8.  The press releases were disclosed to the plaintiff in full.  *See id.*, Attach. D (September 1, 1999 and September 5, 2000 press releases).

4.  <u>The Office of Intelligence and Criminal Investigations (CG-2)</u>

The Office of Intelligence and Criminal Investigations (CG-2) at the Coast Guard's

Washington, D.C. Headquarters initiated a search of records maintained by the United States

Coast Guard Investigative Service ("CGIS").  Def.'s Mem., Declaration of Marty J. Martinez

("Martinez Decl.") ¶ 2.  The search of the "CGIS electronic database and physical files held at

CGIS Headquarters [located] one (1) 1999 electronic entry in the CGIS Case Management Data

System (CMDS) identifiable with the M/V China Breeze."  *Id.*  This "1999 electronic data entry

document [was] titled 'CGIS Case Update Form.'"[2]  *Id.*, Kramek Decl. ¶ 17 & Attach. F.  It

"contained a CGIS Sequence Number for tracking purposes and brief narrative describing a drug

interdiction and seizure of the M/V China Breeze in 1999."  *Id.*, Martinez Decl. ¶ 2.  The

"narrative reported the interception of the M/V China Breeze and the amount of drugs seized; it

did not contain any information associated with individuals arrested or otherwise onboard the

M/V China Breeze at the time of the interdiction and seizure."  *Id.*  A search of CGIS

Headquarters files yielded "no responsive hardcopy documents or records."  *Id*.

Staff also sent a request to the Federal Records Center ("FRC") "for a search of CGIS

documents stored at the FRC identifiable with the M/V China Breeze," but the FRC search

yielded no responsive records.  *Id.* ¶ 3.  Thereafter CGIS Headquarters staff on October 30 and

31, 2007, "visited the FRC and conducted a hand-search of CGIS records stored at the FRC for

the period 1999 which disclosed no responsive records or reports."  *Id.*

Lastly, on October 31, 2007, CGIS staff "contacted the Coast Guard Intelligence

Coordination Center (ICC) . . . and requested [that its staff search its] databases for information,

---

[2]        The *Vaughn* index refers to the CGIS Case Update Form as Document #3.  *Id*. ¶ 18.

records, or reports associated with the M/V China Breeze." *Id.* ¶ 4.  ICC staff located an

Intelligence Information Report ("IIR") "containing information relating to a drug interdiction

and seizure of the M/V China Breeze motor vessel on May 27, 1999."[3]  *Id.*; *see* Kramek Decl.,

Attach. G.  Staff forwarded this IIR and the CGIS Case Update Form to the Office of Claims and

Litigation.  *Id.*, Martinez Decl. ¶ 5.

> 5.  <u>The Legal Offices of the Coast Guard's Seventh and Eighth Districts</u>

In the course of responding to the plaintiff's FOIA request, Office of Claims and

Litigation staff learned that:

> [I]n 1999, the M/V China Breeze was a subject of a joint interagency
> drug interdiction operation near or in the area of responsibility of the
> [Coast Guard] regional offices, namely the Seventh District and
> Eighth [Coast Guard] District[], which are located in the Southern
> Atlantic and Gulf Coast Regions.  Throughout the U.S. the Coast
> Guard is divided into "Districts."  <u>See</u> 33 C.F.R. Part 3.  Any [Coast
> Guard] units or assets involved in this joint interagency operation
> would likely have been operating under the tactical control of [Coast
> Guard] local units, regional offices (called "District Offices"), and/or
> other lead U.S. Government entities or agencies.

*Id.*, Kramek Decl. ¶ 12.  Accordingly, the Office of Claims and Litigation staff contacted the

Coast Guard's Seventh and Eighth District Legal Offices "requesting [that] a FOIA search on

this matter be initiated and conducted for any and all information relating to the M/V CHINA

BREEZE, [the plaintiff], and the government of Panama granting [the Coast Guard]

jurisdictional authority over the M/V CHINA BREEZE."  *Id.* ¶ 13.

Seventh District and Eighth District Legal Office staff manually reviewed physical files

and searched their electronic databases and files for responsive records using the search terms

"Sergiy Kurdyukov," "Kurdyukov," and "China Breeze."  *Id.* ¶¶ 14-15.  No responsive records

---

[3]     The *Vaughn* index refers to the Intelligence Information Report as Document #4.  *Id.*, Kramek Decl ¶ 19.

were located.  *Id.*  Staff from both Districts further advised that no responsive records would

have been forwarded to the National Archives and Records Administration and that "law

enforcement records of this nature are routinely destroyed . . . in accordance with the [Coast

Guard] policy pursuant to the Information and Lifecycle Management Manual."[4]  *Id.* ¶ 14; *see id.*

¶ 15.

>      6.   Results from the Search of a Coast Guard Law Enforcement Database

An Information Technology Specialist conducted a search of "a [Coast Guard] law

enforcement electronic database that was formerly used between 1991 and 2002 to document

law enforcement activities."  *Id.* ¶ 16.  This search yielded "data in a readable format which

reflects information specific to the M/V CHINA BREEZE, consisting of a total of 8 pages."[5]  *Id.*;

*see id.*, Attach. E.  All eight pages were released to the plaintiff in their entirety.  *Id.*

Notwithstanding the fact that "multiple searches were initiated, conducted, and

completed, and good faith inquiries were made, very few records regarding [the plaintiff] or the

China Breeze were found."  *Id.* ¶ 20.  The defendant "believe[s] the information [the plaintiff]

requests no longer exists or that the [Coast Guard] never had possession of a large portion of the

information that would be responsive to his request."  *Id.* ¶ 21.  In a situation such as this, where

the Coast Guard "was not the lead agency" in this multi-agency law enforcement case, "it is

common that the [Coast Guard] would have very limited records in its possession, if any."  *Id.*

The plaintiff appears to challenge the Coast Guard's searches because they failed to

locate the following documents:

---

[4]      "It is [Coast Guard] policy to destroy law enforcement case files (1) one year after the final disposition of
the case, including cases referred to other agencies or departments for action[,] consisting of investigation reports,
violation reports, correspondence, and other related documents."  Kramek Decl. ¶ 21.

[5]      The *Vaughn* index refers to these pages as Document #2.  *Id.* ¶ 16.

> (a) the written confirmation of Fernando Soloranzo, Director General, Merchant Marine, Government of Panama, to LCDR Robert CAMILLUCCI, Coast Guard Attache in Panama, confirming that the M/V CHINA BREEZE was registered in Panama and that on May 27, 1999 he granted authority for the Coast Guard to stop, board, and search the M/V CHINA BREEZE. And also stated that if evidence of illegal activity was discovered, the vessel was to be detained on behalf of the government of Panama. And,
> (b) the written confirmation of Gab[r]iel FERNANDES, sub-director Merchant Marine, Government of Panama, to LCDR CAMILLUCCI, confirming that on May 28, 1999, he granted authority for the Coast Guard to remain on board the M/V CHINA BREEZE and escort the vessel to U.S. port for further dockside inspection and enforcement of U.S. law.

Plaintiff's Rebuttal to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n") at 1-2. The plaintiff asserts that without written authorization from the government of Panama to the Coast Guard the vessel would not have been stopped, boarded, or searched, and no law enforcement action would have been taken upon the discovery of 8[,]800 pounds of cocaine on board. *See id.* at 2-3. Rather than focusing on whether the defendant had conducted a reasonably adequate search for records responsive to his FOIA request, the plaintiff disputes the legal grounds on which the Coast Guard took law enforcement action May 27, 1999. *See id.* The legality of the Coast Guard's action is far beyond the scope of this FOIA action and in no way pertains to the issues presented here.

Having reviewed the defendant's declarations, the Court concludes that the Coast Guard's searches were "reasonably calculated to uncover all relevant documents." *Valencia-Lucena*, 180 F.3d at 325. All of the declarations "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n,* 926 F.2d at 1200 (internal quotation marks and citation omitted); *see Roberts v. United States Dep't of Justice*, No. 92-

1707, 1995 WL 356320 (D.D.C. Jan. 29, 1993) (declaring irrelevant the plaintiff's speculation that a responsive record may have been saved on a backup computer file absent some suggestion in the record that a backup was made).  The fact that the Coast Guard did not locate all of the records sought by the plaintiff is not dispositive.  An agency's search is not presumed unreasonable because it fails to find all the requested information.  *See Steinberg v. United States Dep't of Justice*, 23 F.3d at 551 (noting that the question is not "whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate"); *see also Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C. Cir. 1986).  Furthermore, a requester's challenge requires that he present evidence rebutting the agency's initial showing of a good faith search.  *See Maynard v. Central Intelligence Agency*, 986 F.2d 547, 560 (1st Cir. 1993); *Weisberg v. United States Dep't of Justice*, 705 F.2d 1344, 1351-52 (D.C. Cir. 1983).   The plaintiff has failed to meet this evidentiary burden.

## C. Exemptions

"The FOIA requires every federal agency, upon request, to make 'promptly available to any person' any 'records' so long as the request 'reasonably describes such records.'" *Assassination Archives and Research Ctr. v. Fed. Bureau of Investigation*, 334 F.3d 55, 57 (D.C. Cir. 2003) (quoting 5 U.S.C. § 552(a)(3)).  If an agency invokes a FOIA exemption that authorizes non-production, it bears the burden of establishing the applicability of that exemption. 5 U.S.C. § 552(a)(4)(B) (placing "burden [] on the agency to sustain its action"); *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 775 (1989).

## 1. Exemption 2

Exemption 2 shields from disclosure information that is "related solely to the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  The phrase "personnel rules

12

and practices" has been interpreted to include not only "minor employment matters" but also

"other rules and practices governing agency personnel." *Crooker v. Bureau of Alcohol, Tobacco

and Firearms*, 670 F.2d 1051, 1056 (D.C. Cir. 1981) (en banc). The "information need not

actually *be* 'rules and practices' to qualify under [E]xemption 2, as the statute provides that

matter 'related' to rules and practices is also exempt." *Schwaner v. Dep't of the Air Force*, 898

F.2d 793, 795 (D.C. Cir. 1990) (emphasis in original).

Exemption 2 applies if the information that is sought meets two criteria. First, such

information must be "used for predominantly internal purposes." *Crooker*, 670 F.2d at 1074; *see

Nat'l Treasury Employees Union v. United States Customs Serv.*, 802 F.2d 525, 528 (D.C. Cir.

1985). Second, the agency must show either that "disclosure may risk circumvention of agency

regulation," or that "the material relates to trivial administrative matters of no genuine public

interest." *Schwaner*, 898 F.2d at 794 (citations omitted).

"Predominantly internal documents the disclosure of which would risk circumvention of

agency statutes are protected by the so-called 'high 2' exemption." *Schiller v. Nat'l Labor

Relations Bd.*, 964 F.2d 1205, 1207 (D.C. Cir. 1992). "High 2" exempt information is "not

limited . . . to situations where penal or enforcement statutes could be circumvented." *Id*. at

1208. On the other hand, if the material at issue merely relates to trivial administrative matters

of no genuine public interest, it is deemed "low 2" exempt material. *See Founding Church of

Scientology of Washington, D.C., Inc. v. Smith*, 721 F.2d 828, 830-31 n.4 (D.C. Cir. 1983).

"Low 2" exempt information includes "file numbers, initials, signature and mail routing stamps,

references to interagency transfers, and data processing references," *Scherer v. Kelley*, 584 F.2d

170, 175-76 (7th Cir. 1978), *cert. denied sub nom. Scherer v. Webster*, 440 U.S. 964 (1979), and

other "trivial administrative data such as . . . data processing notations[] and other administrative

markings." *Coleman v. Fed. Bureau of Investigation*, 13 F. Supp. 2d 75, 78 (D.D.C. 1998) (citation omitted).

a. The Coast Guard Spreadsheet

The four-page spreadsheet maintained by the Coast Guard's Office of Law Enforcement, though "not part of a case record or investigation file, contains "annual statistic[s] and data organized in columns, such as the type and amount of drugs seized, flag state of vessel, number of individuals seized, vessels' names, the location of seizure on the water, names of the operation under which the drug interdiction operation took place, and a non-inclusive list of involved entities." Def.'s Mem., Kramek Decl. ¶ 8.  On the spreadsheet is "a 1999 entry containing one row of several columns of information pertaining to the M/V CHINA BREEZE." *Id.*  Specifically, the entry "indicates that the M/V CHINA BREEZE was stopped and seized by the [Coast Guard] and HMS Marlboro, a British Caribbean patrol warship, in or near the Columbia Basin on May 27, 1999 with over 10,000 tons of cocaine on board." *Id*; *see id.*, Attach. C (redacted spreadsheet).  The Coast Guard released the entry pertaining to the M/V CHINA BREEZE in its entirety, and redacted all other entries pursuant to FOIA Exemptions 2 and 7.  *Id.*, Kramek Decl. ¶ 8.

According to the Coast Guard, it redacted entries pertaining to other vessels because they "could be used to circumvent or avoid law enforcement detection" and to "interfere with future law enforcement proceedings."  *Id.* ¶ 9.  If this information were released, "persons could use it to avoid areas where the Coast Guard and other countries conduct maritime counter-drug operations."  *Id.*  The information may show geographic areas where there [is] a concentration of seizures, show the name and type of law enforcement vessels used in those operations, [and] the times of year that certain surge operations have been conducted in the past."  *Id.*  The Coast

14

Guard thus demonstrates that its decision to redact information from the spreadsheet under

Exemption 2 as "high 2" exempt information is proper.[6]

b.  The Intelligence Information Report

The Intelligence Information Report is designed "to communicate information to and

between law enforcement and intelligence agencies." *Id.* ¶ 19.  Based on Exemptions 2 and 7,

the Coast Guard redacts "[i]nformation that might reveal Coast Guard and other agency law

enforcement or inter-agency process, procedure, internal organization and similar matters[,]

including all headings, message headings, message addresses, routine controls, internal system

management of messages and other agency information" which neither is "responsive to [the

plaintiff's] FOIA request" nor is "germane to the substance of the [report]." *Id.*

From this somewhat vague description and review of the redacted report, *see id.*, Attach.

G, it appears that the Coast Guard deems information such as message headings and addresses,

routine controls, and references to message management "low 2" exempt material.  This type of

information relates to trivial internal administrative matters of no genuine public interest and the

Coast Guard's decision to withhold it as "low 2" exempt information is appropriate.

The declarant's further explanation suggests that release of other information in the

Intelligence Information Report "has the potential to reveal how, to whom, and what the Coast

Guard and other law enforcement and intelligent [sic] agencies communicate amongst one

---

[6]      The Coast Guard relies on Exemption 7 in conjunction with Exemption 2 to withhold information from the spreadsheet.  Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm.  *See Fed. Bureau of Investigation v. Abramson*, 456 U.S. 615, 622 (1982).  It does not specify the subpart of Exemption 7 on which it relies, and therefore does not establish that release of the information would cause harm as contemplated by Exemption 7.  However, because this information properly is withheld under Exemption 2, there is no need to consider the applicability of another exemption with respect to the same information.  *See Simon v. Dep't of Justice*, 980 F.2d 782, 785 (D.C. Cir. 1994).

another." *Id.*, Kramek Decl. ¶ 19.  From this description, it appears that the Coast Guard

considers this information "high 2" exempt information because its release "may risk

circumvention of agency regulation." *Schiller*, 964 F.2d at 1206.  Because the declarant relies

both on Exemption 2 and Exemption 7, and fails to specify the subpart of Exemption 7 on which

the Coast Guard relies, the Court cannot determine whether its decision to withhold additional

information from the report under either Exemption 2 or Exemption 7, or both, is appropriate.

### 2.  Exemption 7(C)

#### a.  Law Enforcement Records

Exemption 7 protects from disclosure "records or information compiled for law

enforcement purposes," but only to the extent that disclosure of such records would cause an

enumerated harm.  5 U.S.C. § 552(b)(7); *see Fed. Bureau of Investigation v. Abramson*, 456 U.S.

615, 622 (1982).  In order to withhold materials properly under Exemption 7, an agency must

establish that the records at issue were compiled for law enforcement purposes, and that the

material satisfies the requirements of one of the subparts of Exemption 7.  *See Pratt v. Webster*,

673 F.2d 408, 413 (D.C. Cir. 1982).  In assessing whether records are compiled for law

enforcement purposes, the "focus is on how and under what circumstances the requested files

were compiled, and whether the files sought relate to anything that can fairly be characterized as

an enforcement proceeding." *Jefferson v. Dep't of Justice*, 284 F.3d 172, 176-77 (D.C. Cir.

2002) (citations and internal quotations omitted).

Among others, the Coast Guard's functions include pollution enforcement, *see* Def.'s

Mem., Krevait Decl. ¶ 2, drug interdiction, *see id.*, Ferrell Decl. ¶ 3, and criminal investigations

and intelligence, *see id.*, Martinez Decl. ¶ 2.  The record shows that the plaintiff's contact with

the Coast Guard came about when "a [Coast Guard] law enforcement detachment" discovered

16

that the M/V CHINA BREEZE was "carrying 8,800 lbs. of cocaine . . . in a sewage tank onboard the vessel." *Id.*, Kramek Decl., Attach. F (CGIS Case Update Form) at 1.  The record also shows that the plaintiff was aboard the vessel at the time of its seizure.  *See id.*, Attach. G (Intelligence Information Report) at 3.  The documents located in response to the plaintiff's FOIA request all pertain to the seizure of the M/V CHINA BREEZE on May 27, 1999.  *See id.*, Kramek Decl., Attach. C-G.  From the Coast Guard's declarations and other information gleaned from documents submitted by both parties, the Court concludes that the records at issue were compiled for law enforcement purposes.

### b.  The CGIS Case Update Form[7]

Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552 (b)(7)(C).  In determining whether this exemption applies to particular material, the Court must balance the interest in privacy of individuals mentioned in the records against the public interest in disclosure.  *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993).  Individuals have a "strong interest in not being associated unwarrantedly with alleged criminal activity," *Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 91-92 (D.C. Cir. 1984), and "the only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'"  *Davis v. United States Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting. *Reporters Comm. for Freedom of the Press*, 489 U.S. at 773).

---

[7]     The Court defers ruling on the Coast Guard's decision to redact the names of government and non-government employees mentioned in the Intelligence Information Report under Exemptions 6 and 7(C), *see id.*, Kramek Decl. ¶ 19, until such time as the defendant files a renewed summary judgment motion.

From the CGIS Case Update Form, the Coast Guard has redacted "a single government employee's name" under Exemption 7(C).  Def.'s Mem., Kramek Decl. ¶ 18 & Attach. F. Joseph Kramek explains in his declaration that release of the employee's name "would result in a clearly unwarranted invasion of personal privacy" and "could potentially result in threats against him or her, as [the underlying] incident involves a multi-ton seizure of cocaine and numerous criminal defendants who are currently incarcerated as a result of their conviction from this incident." *Id.* ¶ 18.  Moreover, the employee's name is not information relevant to the plaintiff's FOIA request.  *Id.*  In response, the plaintiff has not raised an objection to the Coast Guard's decision to redact this information.  *See generally*, Pl.'s Opp'n; Plaintiff's Reply to Defendant's Response to Plaintiff's Opposition to Defendant's Motion for Summary Judg[]ment ("Pl.'s Surreply").

Individuals have a "strong interest in not being associated unwarrantedly with alleged criminal activity," *Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 91-92 (D.C. Cir. 1984), and Exemption 7(C) recognizes that the stigma of being associated with any law enforcement investigation affords broad privacy rights to those who are connected in any way with such an investigation unless a significant public interest exists for disclosure.  *Reporters Comm. for Freedom of the Press*, 489 U.S. at 773-75; *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d at 1205-06.  The employee whose name is withheld certainly has a privacy interest in avoiding the disclosure of his or her name.  *See, e.g., Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989) (noting an individual's significant privacy interest "in avoiding the unlimited disclosure of his or her name and address"), *cert. denied*, 494 U.S. 1078 (1990).  It is the requester's obligation to articulate a significant public interest sufficient to outweigh an individual's privacy interest.  *See Nat'l Archives and Records Admin. v. Favish*, 541

18

U.S. 157, 172 (2004).  Here, the plaintiff makes no such showing, *see generally* Pl.'s Opp'n;

Pl.'s Surreply, and the Court therefore concludes that the employee's name properly was

redacted from the CGIS Case Update Form under Exemption 7(C), *see, e.g., Rugiero v. United*

*States Dep't of Justice*, 257 F.3d 534, 552 (6th Cir. 2000) (concluding that the agency properly

withheld "identifying information on agents, personnel, and third parties after balancing the

privacy interests against public disclosure"), *cert. denied*, 534 U.S. 1134 (2002); *Lesar v. United*

*States Dep't of Justice*, 636 F.2d 472, 487 (D.C. Cir. 1980) (finding that FBI personnel "have a

legitimate interest in preserving the secrecy of matters that conceivably could subject them to

annoyance or harassment in either their official or private lives").

### D.   Segregability[8]

If a record contains information that is exempt from disclosure, any reasonably

segregable information must be released after deleting the exempt portions, unless the non-

exempt portions are inextricably intertwined with exempt portions.  *Trans-Pacific Policing*

*Agreement v. United States Customs Serv.*, 177 F.3d 1022 (D.C. Cir. 1999); 5 U.S.C. § 552(b).

The Court errs if it "simply approve[s] the withholding of an entire document without entering a

finding on segregability, or the lack thereof."  *Powell v. United States Bureau of Prisons*, 927

F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology of California v. United*

*States Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979)).

Having reviewed the declarations and the *Vaughn* index submitted in support of the

defendants' motion, the Court concludes that only the exempt portions of the spreadsheet and the

CGIS Case Update Form have been withheld, and that all reasonably segregable material has

---

[8]       The Court defers its segregabilty ruling as to the Intelligence Information Report until such time as the
defendant files a renewed summary judgment motion.

been released to the plaintiff.  This conclusion is supported by the declarations and *Vaughn*

index related to these records as they adequately specify "in detail which portions of the

document[s] are disclosable and which are allegedly exempt."  *Vaughn v. Rosen*, 484 F.2d 820,

827 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974).

III.   CONCLUSION

For the foregoing reasons, the Court concludes that: (1)  the United States Coast Guard

conducted a reasonable and adequate search for records responsive to the plaintiff's FOIA

request; (2) it properly withheld under Exemption 2 information from the spreadsheet as "high

2" exempt information and from the Intelligence Information Report as "low 2" exempt

information; (3) it properly withheld under Exemption 7(C) the name of a government

employee from the CGIS Case Update Form; and (4) it released all reasonably segregable

portions of the spreadsheet and the CGIS Case Update Form.  As to these matters, the

defendant's summary judgment motion will be granted.  However, because the Coast Guard has

not justified adequately its decision to withhold portions of the Intelligence Information Report

under Exemptions 2 (as "high 2" exempt information), 6 and 7(C), the defendant's summary

judgment motion will be denied in part without prejudice.  The defendant is directed to file a

renewed motion for summary judgment within 45 days of entry of this Order based on additional

undisputed facts or by providing additional legal arguments in support of its position not to

disclose the requested information.

An Order consistent with this Memorandum Opinion is issued separately.

_____/s/_____
REGGIE B. WALTON
DATE:  September 29, 2008              United States District Judge